556 F.2d 961
 UNITED STATES of America, Plaintiff-Appellee,
v.
Marc Paul FANNON, Defendant-Appellant.
UNITED STATES of America, Plaintiff-Appellee,
v.
Paul Howard GUMERLOCK, Defendant-Appellant.
 Nos. 76-2700, 76-2732.
 United States Court of Appeals,
Ninth Circuit.
 July 5, 1977.
 
 Donald A. Nunn, argued, San Diego, Cal., for defendant-appellant fannon.
 Michael D. Stein, Frank Ragen, argued, Baxley, Ragen & Ray, San Diego, Cal., for defendant-appellant Gumerlock.
 Stephen W. Peterson, Asst. U.S. Atty., San Diego, Cal., on the brief, Terry J. Knoepp, U.S. Atty., Stephen W. Peterson, Asst. U.S. Atty., San Diego, Cal., argued, for plaintiff-appellee.
 Appeal from the United States District Court for the Southern District of California.
 Before CHAMBERS, KOELSCH and HUFSTEDLER, Circuit Judges.
 OPINION
 KOELSCH, Circuit Judge:
 
 
 1
 These appeals present this question: Is a search by an airline employee of a package deposited with the air carrier for shipment subject to the limitations of the Fourth Amendment?
 
 
 2
 The material facts are not in dispute: acting in concert, the defendants, on successive days, deposited at the United Airlines freight office at San Diego, California, two packages for shipment by air to Milwaukee, Wisconsin. After the defendants had left the office, employees of the carrier, suspecting the packages contained drugs, opened them and discovered heroin secreted therein. They then turned the drugs over to federal law enforcement officers. Defendants were eventually indicted, tried jointly and convicted of multiple counts of violating 21 U.S.C. §§ 841(a)(1) and 846.[1]
 
 
 3
 The principal error they assign is the court's ruling refusing to suppress the use of the drugs as evidence. The court based its ruling on the ground that because the searches originated with and were conducted by airline employees acting alone, they were private in character and hence not governed by the Fourth Amendment.
 
 
 4
 We conclude that this ruling was error.
 
 
 5
 In the absence of the requisite governmental sanction whether by explicit authorization[2] or comparable degree of involvement[3] searches of cargo by common carriers resulting in the discovery and seizure of contraband which form the basis for subsequent criminal proceedings are private rather than governmental and thus not subject to the strictures of the Fourth Amendment. United States v. Ford, 525 F.2d 1308 (10th Cir. 1975); United States v. Issod, 508 F.2d 990 (7th Cir. 1974), cert. denied, 421 U.S. 916, 95 S.Ct. 1578, 43 L.Ed.2d 783 (1975); United States v. Pryba, 163 U.S.App.D.C. 389, 502 F.2d 391 (1974), cert. denied, 419 U.S. 1127, 95 S.Ct. 815, 42 L.Ed.2d 828 (1975); United States v. DeBerry, 487 F.2d 448 (2d Cir. 1973); United States v. Ogden, 485 F.2d 536 (9th Cir. 1973), cert. denied,416 U.S. 987, 94 S.Ct. 2392, 40 L.Ed.2d 764 (1974).[4] Such searches, whether founded on common law right[5] or conducted pursuant to tariff,[6] do not differ for Fourth Amendment purposes from private searches: the evidence so obtained is not subject to exclusion under the Fourth Amendment because it was not discovered by government officers. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048; United States v. Sherwin, 539 F.2d 1 (9th Cir. 1976) (in banc).
 
 
 6
 Appellants concede that the searches in issue in this case were conducted solely by the employees of a private air carrier and that there was no evidence of any prior or contemporaneous involvement by government officers. They contend, however, that the air carrier was authorized by statute to conduct the searches as part of the government's air transportation security program, thus endowing the carrier's conduct with a governmental purpose and subjecting it to Fourth Amendment scrutiny.
 
 
 7
 In 1974 Congress enacted the "Air Transportation Security Act" (the "Act"; Pub.L. 93-366, Title II, 88 Stat. 415).[7] In the words of the Senate committee report, the Act was designed to deal "with prevention, deterrence and punishment for criminal offenses against the air transportation system." S.Rep.No.93-13, 93d Cong., 1st Sess. 2 (1973). Section 204 of the Act amended section 1111 of the Federal Aviation Act of 1958 (49 U.S.C. § 1511) to require the Administrator of the Federal Aviation Administration to authorize air carriers to condition air transportation of persons and property on the consent of the passenger or shipper to searches to determine the presence of "dangerous weapon(s), explosive(s), or other destructive substance(s)."[8] more 49 U.S.C. § 1511(a).
 
 
 8
 Section 204 further amended section 1511 by adding a new subsection (b):
 
 
 9
 "Any agreement for the carriage of persons or property in air transportation or intrastate air transportation by an air carrier, intrastate air carrier, or foreign air carrier for compensation or hire shall be deemed to include an agreement that such carriage shall be refused when consent to search such persons or inspect such property for the purposes enumerated in subsection (a) of this section is not given."
 
 
 10
 The question thus becomes: does this statute which by its terms authorizes carriers in air commerce to condition transportation on the consent of the passenger or shipper to a search confer on the carrier a governmental function sufficient to subject its conduct to constitutional limitations? Evans v. Newton, 382 U.S. 296, 299, 86 S.Ct. 486, 15 L.Ed.2d 373 (1966); Public Utilities Commission v. Pollak, 343 U.S. 451, 462, 72 S.Ct. 813, 96 L.Ed. 1068 (1952); Marsh v. Alabama, 326 U.S. 501, 506, 66 S.Ct. 276, 90 L.Ed. 265 (1946); McCabe v. A.T. & S.F. Ry. Co., 235 U.S. 151, 162, 35 S.Ct. 69, 59 L.Ed. 169 (1914); cf. Reitman v. Mulkey, 387 U.S. 369, 380, 87 S.Ct. 1627, 18 L.Ed.2d 830 (1967); Terry v. Adams, 345 U.S. 461, 484, 73 S.Ct. 809, 97 L.Ed. 1152 (1953) (Clark, J., concurring). We conclude the answer is "yes."
 
 
 11
 Measured by its evident purpose, the statute is more than merely declaratory of a pre-existing common law power of search on the part of common carriers. Cf. United States v. Pryba, supra, 502 F.2d at 399; United States v. DeBerry, supra, 487 F.2d at 449 n.1; Gold v. United States, 378 F.2d 588, 591 (9th Cir. 1967). Its circumscribed object the detection and seizure of "dangerous weapon(s), explosive(s), or other destructive substance(s)" is predicated upon a real and demonstrable threat to the public safety which the public authorities, notably the police, have traditionally been relied upon to combat. The statute does not speak to the distinguishably private interest of the carrier of goods in insuring against pilferage,[9] or criminal[10] or civil[11] liability, or in determining the identity of the shipper,[12] or that the applicable tariff is charged,[13] or any other discernably private non-governmental interest.
 
 
 12
 Moreover, the fact that section 1511(b) was passed as part of a congressional effort "to statutorily provide security against acts of criminal violence directed against air transportation" (H.R.Rep.No.93-885, 93d Cong., 2d Sess. 9 (1974) U.S.Code Cong. & Admin.News 1974, p. 3976), strengthens the view that Congress must have considered the danger presented by air shipments of weapons, explosives, etc., to be sufficiently substantial to bring the subject within the ambit of the government's air transportation security scheme. Certainly it is not unreasonable to conclude that Congress thought it worthwhile to include the subject of air freight shipments within the reach of an administrative scheme designed to enhance the security of air transportation from acts of criminal violence. Confronted as we are with explicit statutory language authorizing air carriers to exact the shipper's consent to a weapons search as a condition to transport and a less than eloquent legislative history,[14] we can imagine no reasonable alternative construction of the statute.
 
 
 13
 Accordingly, we believe that Congress intended to employ the efforts of private air carriers in insuring the security of air transportation from seizure, bombings and like forms of criminal violence. In so delegating the conditional and circumscribed power of search embodied in section 1511(b), Congress has conferred on air carriers a governmental function subject to constitutional limitations. United States v. Davis, 482 F.2d 893 (9th Cir. 1973); see also Marsh v. Alabama, supra; Gambino v. United States, 275 U.S. 310, 48 S.Ct. 137, 72 L.Ed. 293 (1927); McCabe v. A.T. & S.F. Ry. Co., supra.
 
 
 14
 We are thus led to the conclusion that in appropriating the efforts of private air carriers in aid of the government's administrative scheme to strengthen the security of air transportation, Congress supplanted whatever common law power of search air carriers may have had and subjected such searches to the Fourth Amendment's standard of reasonableness. Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967); United States v. Davis, supra; cf. United States v. Biswell, 406 U.S. 311, 92 S.Ct. 1593, 32 L.Ed.2d 87 (1972); Colonnade Catering Corp. v. United States, 397 U.S. 72, 90 S.Ct. 774, 25 L.Ed.2d 60 (1970).
 
 
 15
 Having determined that Congress intended to include inspections of air freight by private carriers as an element in the administrative apparatus designed to reduce threats to aircraft security, the remaining question is the extent to which such searches are limited by Fourth Amendment standards. In this case, however, we need not determine whether administrative searches of the specific type in issue here pass constitutional muster in all respects. Cf. United States v. Davis, supra, at 910-913.
 
 
 16
 We are clear that as a threshold matter, searches of articles presented for air freight shipment (like the hand baggage, etc., of boarding passengers) must be preceded by reasonable notice to the shipper that search is a condition of carriage.[15] This notice may take various forms and will be deemed reasonable if sufficient to apprise the ordinary shipper of the condition. In effect, our holding in this case does no more than make explicit, under constitutional compulsion, the conditional consent to search which Congress impliedly inserted in all agreements for the carriage of goods in air transportation by enacting section 1511(b).[16]
 
 
 17
 The judgments of conviction are reversed, and the causes are remanded for further proceedings consistent with the views expressed herein.
 
 
 18
 REVERSED AND REMANDED.
 
 CHAMBERS, Circuit Judge, concurring:
 
 19
 Our United States v. Davis, 482 F.2d 893 (9th Cir. 1973), seems to compel the result reached hereinabove. But I do not have to like concurring.
 
 
 20
 Also, the Supreme Court's decision in United States v. Chadwick, --- U.S. ----, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977), may not be completely apposite here, but there is a message in it which influences my concurrence.
 
 
 21
 Cases such as Fannon's and Gumerlock's may ultimately result in the abolition of the judge-made exclusionary rule, a rule I would not like to see abolished completely but limited according to some standards.
 
 
 
 [1]
 The matter is here upon defendants' direct appeals from the judgments of conviction
 
 
 [2]
 See United States v. Davis, 482 F.2d 893, 897-904 (9th Cir. 1973)
 
 
 [3]
 Lustig v. United States, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); Corngold v. United States, 367 F.2d 1, 5-6 (9th Cir. 1966) (in banc)
 
 
 [4]
 But compare United States v. Kelly, 529 F.2d 1365, 1371 (8th Cir. 1976), and United States v. Newton, 510 F.2d 1149, 1153 (7th Cir. 1975), with United States v. Sherwin, 539 F.2d 1, 7 (9th Cir. 1976) (in banc)
 
 
 [5]
 See, e. g., United States v. Pryba, supra; United States v. DeBerry, supra; Gold v. United States, 378 F.2d 588 (9th Cir. 1967)
 
 
 [6]
 See, e. g., United States v. Ford, 525 F.2d 1308, 1312 (10th Cir. 1975); United States v. Cangiano, 464 F.2d 320, 324 n. 3 (2d Cir. 1972), vacated on other grounds, 413 U.S. 913, 93 S.Ct. 3047, 37 L.Ed.2d 1023 (1973)
 
 
 [7]
 Title II and its companion Title I, the "Antihijacking Act of 1974," 88 Stat. 409, are variously codified as part of Title 49, United States Code
 
 
 [8]
 The text of subsection 1511(a) reads in full:
 "(a) The Administrator shall, by regulation, require any air carrier, intrastate air carrier, or foreign air carrier to refuse to transport
 (1) (a) any person who does not consent to a search of his person, as prescribed in section 1356(a) of this title, to determine whether he is unlawfully carrying a dangerous weapon, explosive, or other destructive substance, or
 (2) any property of any person who does not consent to a search or inspection of such property to determine whether it unlawfully contains a dangerous weapon, explosive, or other destructive substance.
 Subject to reasonable rules and regulations prescribed by the Administrator, any such carrier may also refuse transportation of a passenger or property when, in the opinion of the carrier, such transportation would or might be inimical to safety of flight."
 
 
 [9]
 United States v. Entringer, 532 F.2d 634, 637 (8th Cir. 1976); United States v. Kelly, 529 F.2d 1365, 1368 (8th Cir. 1976)
 
 
 [10]
 United States v. Sherwin, 539 F.2d 1, 7 (9th Cir. 1976) (in banc); United States v. Pryba, supra, 502 F.2d at 399
 
 
 [11]
 The Nitro-Glycerine Case (Parrot v. Wells), 82 U.S. (15 Wall.) 524, 21 L.Ed. 206 (1873)
 
 
 [12]
 United States v. Echols, 477 F.2d 37, 40 (8th Cir. 1973), cert. denied, 414 U.S. 825, 94 S.Ct. 128, 38 L.Ed.2d 58 (1973)
 
 
 [13]
 United States v. DeBerry, 487 F.2d 448, 449 n.1 (2d Cir. 1973)
 
 
 [14]
 The relevant committee reports are all but mute on the subject of Congress' specific intention in enacting subsection 1511(b). See H.R.Rep.No.93-885, supra, at 23; S.Rep.No.93-13, supra, at 33, U.S.Code Cong. & Admin.News 1974, p. 3975
 
 
 [15]
 We thus need not consider the additional grounds for reversal urged by appellants
 
 
 [16]
 Although we have no occasion here to determine the retroactive effect, if any, of our decision in this case, we note the Court's observation in United States v. Peltier, 422 U.S. 531, 535, 95 S.Ct. 2313, 2316, 45 L.Ed.2d 374 (1975), "that in every case in which the Court has addressed the retroactivity problem in the context of the exclusionary rule, whereby concededly relevant evidence is excluded in order to enforce a constitutional guarantee that does not relate to the integrity of the factfinding process, the Court has concluded that any such new constitutional principle would be accorded only prospective application." (Footnote omitted.) See Hankerson v. North Carolina, --- U.S. ----, 97 S.Ct. 2339, 53 L.Ed.2d 306 (1977)