160 N.J. Super. 576 (1978)
390 A.2d 692
STATE OF NEW JERSEY, PLAINTIFF,
v.
ROBERT THOMAS POHLE AND ROBERT CAPUTI, DEFENDANTS.
Superior Court of New Jersey, Law Division (Criminal).
Decided June 29, 1978.
*580 Mr. John H. Stamler, Union County Prosecutor, for the State (Mr. Robert D. Clarke, Assistant Prosecutor, appearing).
Mr. Edward Goldberg, attorney for defendant Pohle.
Mr. S. David Levy, Deputy Public Defender, for defendant Caputi (Mr. Jack Venturi, Assistant Deputy Public Defender, appearing).
BRODY, J.C.C. (temporarily assigned).
A package containing controlled dangerous substances was carried by United Airlines (United) from Los Angeles, California, to Newark International Airport (Newark) in Elizabeth, New Jersey. A United employee had opened the package in Los Angeles and notified the local police of its contents. The Los Angeles police arranged with Newark federal narcotics agents for a controlled delivery. When defendants claimed the package at Newark on March 22, 1977, they *581 were arrested. The package was seized and later opened without a warrant. Defendants, who are charged with possession and possession with intent to distribute, N.J.S.A. 24:21-20(a) (1) and 24:21-19(a) (1), moved successfully before me to suppress the package's contents.[1]
There were two hearings. At the first the parties were content to have the motions turn on the testimony of two federal narcotics agents assigned to Newark. The agents received a telephone alert from the Los Angeles police that a package containing controlled dangerous substances, about the size of a shirt box, was being carried as freight aboard a United flight bound for Newark. According to the Los Angeles police, an airline employee at the Los Angeles International Airport had X-rayed the package while processing it for shipment and as a result became suspicious of its contents. The employee opened the package and found inside towelling, socks, $5,000 in cash, and about 1,000 methaqualone tablets. He then called the police, who examined and repackaged the contents.
The Los Angeles police arranged for the pilot of the plane to deliver the package to the federal agents at Newark. The agents arranged for the addressee to pick up the package at the airline counter where it would ordinarily be claimed.
Everything went according to plan. Defendant Pohle claimed the package and walked hurriedly out of the building, the agents following discreetly behind. As Pohle entered a waiting car operated by defendant Caputi, the agents placed them both under arrest and seized the package from Pohle. An hour after the arrest the agents opened the package and found the contents to be as described by the Los *582 Angeles police. No warrant had been obtained to search the package.
The State justifies the New Jersey search as incident to defendants' lawful arrest. The lawfulness of the arrests is not in dispute. A warrant is not necessary to render lawful an arrest based, as here, upon probable cause. United States v. Watson, 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976), reh. den. 424 U.S. 979, 96 S.Ct. 1488, 47 L.Ed.2d 750 (1976). A lawful arrest authorizes the seizure of items within the arrestee's reach in order to prevent destruction of evidence and avert danger to arresting officers. Chimel v. California, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969). A lawful arrest also authorizes the seizure and search of items intimately associated with the arrestee's person and customarily surrendered as part of arrest procedures. United States v. Edwards, 415 U.S. 800, 94 S.Ct. 1234, 39 L.Ed.2d 771 (1974) (clothing); United States v. Robinson, 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973) (contents of arrestee's pockets).
However, a lawful arrest does not authorize opening a seized container less intimately associated with the person of the arrestee, such as a footlocker, briefcase or satchel. United States v. Chadwick, 433 U.S. 1, 16, 97 S.Ct. 2476, 2486, 53 L.Ed.2d 538, 551, n. 10 (1977) (footlocker); United States v. Berry, 560 F.2d 861, 864 (7 Cir.1977) (briefcase); State v. Parker, 153 N.J. Super. 481, 488-90 (App. Div. 1977) (satchel). A sealed package about the size of a shirt box is similarly not intimately associated with the person of the arrestee, and a person carrying such a package has a reasonable expectation that its contents will remain private despite his arrest while carrying it. While police have the right to seize the package as an incident of arrest, they may not search its contents without a warrant.
In the present case, however, that warrant requirement is beside the point. No search occurred when the agents opened the package at Newark. The controlled delivery of *583 the package was a single episode. It began when the United employee X-rayed it, opened and inspected its contents in Los Angeles. It continued when the Los Angeles police examined the contents, replaced them in the package, resealed it and arranged for its delivery by the pilot to the federal agents at Newark. It continued while Pohle, continuously on the brink of arrest, picked up the package and left the terminal. It concluded when the agents retrieved the package before he opened it. The police exercised continuous control over the package from their examination of its contents in Los Angeles to their reexamination of its contents in New Jersey. Re-examination by law enforcement officers of evidence in their control is not a "search." See United States v. Ford, 525 F.2d 1308, 1310-12 (10 Cir.1975); United States v. DeBerry, 487 F.2d 448, 451 (2 Cir.1973).
A different question would be presented had the agents lost control over the package. Instead of simply retrieving it as an incident to Pohle's lawful arrest, they then would have had to make a further intrusion into a protected zone of privacy. Cf. United States v. Valen, 479 F.2d 467, 471-72 (3 Cir.1973). That intrusion, such as entry into a home, would have been a new search, which must be authorized by a warrant or by a recognized exception to the warrant requirement. Cf. State v. O'Herron, 153 N.J. Super. 570 (App. Div. 1977) (barring warrantless entry into backyard to seize a marijuana plant growing in plain view). See also, State v. Mier, 147 N.J. Super. 17 (App. Div. 1977) (authorizing issuance of anticipatory warrant). But here the police never lost control of the package between its opening in Los Angeles and its reopening in Newark. The reopening of the package was not a Chadwick search, but simply another look at the evidence by the police, albeit not the same policemen who had examined it in Los Angeles.[2]
*584 After orally outlining the foregoing analysis, I granted defendants' motion for a second hearing at which the State would be called upon to produce direct evidence of the circumstances surrounding the warrantless Los Angeles search. If that search had been constitutionally defective, the contents of the package would have to be suppressed as the fruits of an unlawful search. Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).
Before presenting evidence at the second hearing, the State challenged defendants' standing to contest the Los Angeles search on the grounds that they had no interest in the premises where the search was conducted and no interest in the package until they accepted its delivery at Newark. Defendants asserted no interest in the premises, but the parties stipulated that defendant Pohle is named on the package as addressee and that the address stated is that of defendant Caputi.
The State relied upon United States v. Groner, 494 F.2d 499 (5 Cir.1974), in which a defendant, charged with interstate transportation of allegedly obscene material, was denied standing to contest the legality of a search conducted while the material was being shipped to him. The Groner court held that defendant lacked standing because he had not shown any possessory or proprietary interest in the premises where the search took place and was not there at the time of the search. However, as the Eighth Circuit concluded in reaching the opposite result on comparable facts, the Groner court relied on too narrow a reading of Brown v. United States, 411 U.S. 223, 93 S.Ct. 1565, 36 L.Ed.2d 208 (1973). United States v. Kelly, 529 F.2d 1365, 1370 (8 Cir.1976). In Brown the defendants, charged with theft, had allegedly sold the stolen goods to a fence whose warehouse was searched two months later. The goods were found in the warehouse. By the time of the search defendants no longer had any interest in the goods. Under those circumstances the Supreme Court held that defendants lacked standing because they had no interest in the warehouse and *585 were not there at the time of the search. But Brown does not preclude standing where the aggrieved person had a possessory or proprietary interest in the evidence at the time of the search. 411 U.S. at 225, 93 S.Ct. at 1567, 36 L.Ed.2d at 212.
In the present case the State concedes  indeed, it is part of the theory of its case  that both defendants were expecting the package and knew the nature of its contents at the time of the Los Angeles search. Regardless of whether such interest rises to a traditional property right, it has been recognized as sufficient to support a reasonable expectation of privacy protected by the Fourth Amendment. United States v. Kelly, supra, 592 F.2d at 1370. Defendants have standing.
Based on evidence presented at the second hearing, I find the following occurred in Los Angeles. United offers Small Package Dispatch ("SPD") airflight service, which provides speedy and predictable carriage of small packages in the baggage compartments of regularly scheduled passenger planes. SPD is available only for packages weighing less than 50 pounds and having a value between $50 and $500 that are given to United no later than 30 minutes before departure of the flight to which they are assigned.
A United clerk received the package in question from a young man ("shipper") who, in accordance with longstanding tariff regulations, declared its contents and value. The declaration is necessary not only to compute the rate, but also to identify cargo that a shipper might not realize is dangerous, such as a battery containing acid. The shipper declared the contents to be clothing, including shoes, and their value to be $50, the minimum. The clerk computed the fee to be $38.50, which the shipper paid. Because the clerk's suspicions were aroused, he asked for the shipper's driver's license and noted its number. Two things bothered the clerk: the package seemed too small to contain shoes and its declared value too modest to warrant the expense of shipping it SPD.
*586 After waiting on some other customers, the clerk took the package to an X-ray machine. The machine disclosed the contents to be three lightly outlined shapes that later turned out to be two bags, each containing about 500 tablets, and a bundle of bills totaling $5,000. The clerk was satisfied that the shapes were not shoes  they did not look like shoes and there was no sign of metal that might have been nails or buckles. There was nothing on the X-ray screen even so dense as to indicate a leather sole.
The clerk turned over the package to his supervisor, Charles Knudson, who opened the package, removed its contents, telephoned the Los Angeles police, and notified his Newark office to advise anyone who showed up for the package that it was lost. The police took custody of the package and its contents. Two days later they arranged for the controlled delivery previously described.
The State contends that the Los Angeles search was not conducted by the police but by United employees acting as private persons, and was therefore not subject to constitutional strictures. The Fourth Amendment protects against unreasonable governmental intrusions, but not against the acts of private individuals unless those individuals are acting as agents of the government. Burdeau v. McDowell, 256 U.S. 465, 41 S.Ct. 574, 65 L.Ed. 1048 (1921). A search made by a common carrier on its own initiative for its own purposes does not come within the ambit of the Fourth Amendment. United States v. Pryba, 163 U.S. App. D.C. 389, 502 F.2d 391 (D.C. Cir.1974), cert. den. 419 U.S. 1127, 95 S.Ct. 815, 42 L.Ed.2d 838 (1975); United States v. Valen, supra. A search made by a common carrier at the request of or with the assistance of the government, however, is a governmental search within the meaning of the Fourth Amendment. United States v. Fannon, 556 F.2d 961 (9 Cir.1977); Corngold v. United States, 367 F.2d 1 (9th Cir.1966) (en banc).
The State asserts that here the only participation by the government took place after Knudson had opened the package *587 on his own initiative. Placing Knudson's conduct in opening the package in its broad context, however, I find that he was acting at the request of the government as its agent.
For Fourth Amendment purposes, a search is considered governmental not only when the searcher is a government employee or when the government has compelled the search by law, but whenever the governmental involvement is deemed "significant."
* * * [E]ven if governmental involvement at some point could be characterized accurately as mere "encouragement," or as "peripheral, or * * * one of several cooperative forces leading to the [alleged] constitutional violation * * *" that involvement would nevertheless be "significant" for purposes of the Fourth Amendment. Constitutional limitations on governmental action would be severely undercut if the government were allowed to actively encourage conduct by "private" persons or entities that is prohibited to the government itself. [United States v. Davis, 482 F.2d 893, 904 (9 Cir.1973), quoting United States v. Guest, 383 U.S. 745, 755-56, 86 S.Ct. 1170, 16 L.Ed.2d 239 (1966) (defining "state action" under the Fourteenth Amendment)]
In Davis, supra, the court held that a 1971 search of carry-on luggage by an airline employee was an unlawful governmental search. The court found that the Federal Government had become significantly involved in the search, having pressured airlines to conduct searches of boarding passengers and their carry-on luggage as part of the government's campaign against hijacking. 482 F.2d at 896-904.
Relying on Davis, the Ninth Circuit held in 1977 that a search by an airline freight office employee of a package deposited for shipment as cargo was also an unlawful governmental search. United States v. Fannon, supra. The court held that the federal program to prevent "acts of criminal violence and air piracy," which had been codified into law as the Air Transportation Security Act of 1974, authorized airlines to search cargo as well as carry-on luggage. The court construed § 204 of that act, 49 U.S.C. § 1511, which requires air carriers to refuse to transport "any property *588 of any person who does not consent to a search or inspection of such property to determine whether it unlawfully contains a dangerous weapon, explosive or other destructive substance," to refer to property checked for shipment as freight.
This construction is confirmed by analysis of 49 U.S.C.A. § 1472(l), which was added in 1975 to define the "acts of criminal violence and air piracy" that the Air Transportation Security Act of 1974 was intended to prevent. This amendment makes it clear that carriage of undeclared weapons or explosives in cargo areas inaccessible to passengers in flight violates the act.[3]
The federal program described in Davis and Fannon brought about a change in United's operations at the Los Angeles International Airport. Before, the carrier alone decided whether to conduct searches of packages deposited for shipment. This authority was based upon a common law right, United States v. Pryba, supra, and on Civil Aeronautics Board Regulation 96, Official Airfreight Rule 24. This rule, as cited in Pryba, supra, 163 U.S. App. D.C. at 396, 502 F.2d at 398, provides:
Inspection of Shipments  All shipments are subject to inspection by the carrier, but the carrier shall not be obliged to perform such inspection. *589 Knudson testified that United had chosen not to make such inspections. He is a veteran employee, having been employed by United for 23 years, including nine years as a supervisor. In all that time he knew of no instance before 1974 when the company had ever opened a package unless it was unclaimed and there was no other way of identifying the owner. It just was not done.
However, prodded by the 1974 act and its resultant regulations, United dramatically changed its attitude and practices. Knudson testified that he then became "more careful" and "automatically" opened a package if he had "a doubt" as to its contents. If a search disclosed suspicious evidence, he would call the police who were at an airport substation first opened when governmental search activity intensified.
I am satisfied that the above-described governmental activity was not only a substantial but a decisive factor in Knudson's ready resolve to open the package in question. I conclude from all the circumstances that he did not act as a private person, but with the encouragement of, and at the request of, the Federal Government. United States v. Davis, supra. As Fannon put it:
* * * In appropriating the efforts of private air carriers in aid of the government's administrative scheme to strengthen the security of air transportation, Congress supplanted whatever common law power of search air carriers may have had and subjected such searches to the Fourth Amendment's standard of reasonableness. [556 F.2d at 965]
The State concedes that the search in this case does not meet that standard. No warrant was obtained. There was no exigency, at least after the X-ray disclosed no metal or other threatening contents. Neither the clerk nor Knudson believed that the package needed to be opened for reasons of safety.
I am also satisfied that the shipper had not impliedly consented to the search of the package by giving it to United. There was no warning, in the shipping documents or elsewhere, *590 that the package was subject to search. Since the shipper was not on notice, he cannot be held to have consented.[4]United States v. Fannon, supra, 556 F.2d at 965.
To recapitulate the analysis. The controlled delivery of a package ordinarily involves two searches, each having a different character: first, the search of the contents of the package and later, any intrusion necessary to retrieve the package after delivery. Both searches must comport with Fourth Amendment standards in order for the contents of the package to be used as evidence. United States v. Ford, 525 F.2d 1308, 1310 (10th Cir.1975). Often, usually in connection with the initial search, questions of standing and governmental involvement will arise. Each case, of course, will turn on its own facts.
Motions granted.
NOTES
[1] This elaboration of my oral opinion is prompted by the State's motion for leave to appeal. R. 2:5-1 (b). Several issues rendered moot by my determination of defendants' motions are nevertheless treated so that if leave to appeal is granted, the reviewing court will have adequate findings however it may resolve the questions presented.
[2] It is not significant that officers of different jurisdictions cooperated in the police activity. United States v. DeBerry, supra, 487 F.2d at 451, n. 4.
[3] 49 U.S.C.A. § 1472(l) provides in part:

(1) Whoever, while aboard, or while attempting to board, any aircraft in, or intended for operation in, air transportation or interstate air transportation, has on or about his person or his property a concealed deadly or dangerous weapon, which is, or would be accessible to such person in flight, or any person who has * * * placed, attempted to place, or attempted to have placed aboard such aircraft any bomb, or similar explosive or incendiary device, shall be fined * * *
* * * * * * * *
(3) This subsection shall not apply * * * to persons transporting weapons contained in baggage which is not accessible to passengers in flight if the presence of such weapons has been declared to the air carrier.
[4] Nor, since this case involves only domestic air flight, may the State rely upon the border search exception to the warrant requirement. Cf. United States v. Ramsey, 431 U.S. 606, 97 S.Ct. 1972, 52 L.Ed.2d 617 (1977) (upholding warrantless search of international mail at border). See also, State v. Mier, supra (initial search conducted by customs agent).