UNITED STATES of America,

v.

Alphonso Sylvester ROBINSON, Defendant.

Crim. No. CR 80–214A.

United States District Court,
N. D. Georgia,
Atlanta Division.

Dec. 11, 1980.

---

Janet F. King, Asst. U. S. Atty., Atlanta, Ga., for plaintiff.

Ray C. Norvell, Decatur, Ga., for defendant.

## ORDER

MOYE, Chief Judge.

Defendant Alphonso Sylvester Robinson has been charged in a one-count indictment with possession of marijuana with intent to distribute in violation of 21 U.S.C. § 841(a)(1). Defendant filed a motion to suppress evidence on September 11, 1980, pursuant to Fed.R.Crim.P. 12(b)(3) and 41(f). Following an evidentiary hearing held on September 22, 1980, United States Magistrate Allen L. Chancey, Jr. entered a report and recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and (C) and this Court's Local Rule 291.361. The Magistrate recommended that defendant's motion to suppress be denied and defendant filed objections thereto pursuant to 28 U.S.C. § 636(b)(1). This Court, having read the entire transcript of the September 11, 1980, evidentiary hearing, the report and recommendation of the Magistrate, and the briefs of defendant and the government, for the reasons hereinafter delineated, DECLINES to adopt the report and recommendation of the Magistrate with respect to the motion to suppress the marijuana and therefore GRANTS defendant's motion. The Court agrees with that portion of the Magistrate's report and recommendation which finds that defendant consented to the search of his person that resulted in production of the key and baggage claim check used to connect the defendant with the blue suitcase containing the marijuana, but since the Court has decided to suppress the contraband evidence it sees no need to rule on defendant's motion with respect to those non-contraband items.

## FACTS

Basing its conclusions on the testimony of Special Agent Gerald D. Chapman of the Drug Enforcement Administration (DEA), United States Department of Justice, and Alphonso Sylvester Robinson, defendant herein, at the September 22, 1980, suppression hearing, the Court finds the facts to be as follows. Defendant arrived at the Ft. Lauderdale, Florida, airport before midnight on August 12, 1980, carrying a tote

bag, a yellow suitcase, and a blue suitcase. Having missed an earlier flight, defendant had a ticket for a Delta flight to Los Angeles via Atlanta which left Ft. Lauderdale at 3:45 a. m. on August 13, 1980. After defendant checked the two suitcases, he was approached by a Broward County, Florida, detective who asked to interview him. The detective identified himself as a narcotics agent. The defendant consented to speak with the detective. Having first acquired defendant's two checked suitcases from Delta baggage personnel, the detective then asked defendant if he would consent to a search of his person, his carry-on tote bag, and the two checked suitcases. Defendant consented to a search of all of the above except the blue suitcase. He told the detective the blue suitcase belonged to a friend of his and he was transporting the suitcase to Los Angeles for the friend. As such, the defendant told the detective that he could not consent to a search of the blue suitcase, and in Ft. Lauderdale it was never searched. The detective re-delivered the suitcases to Delta and defendant flew to Atlanta.

While defendant was en route to Atlanta the detective phoned Agent Chapman at home in Atlanta and related to him the events in Ft. Lauderdale. Chapman testified on cross-examination that the Florida detective told him over the telephone that as he returned the blue suitcase to Delta in Ft. Lauderdale he smelled perfume and what he *thought* could be marijuana. The Florida detective's written report says he smelled perfume and does not mention marijuana, while Chapman's written report mentions *neither* perfume nor marijuana as a matter of concern in the telephone conversation.

When defendant's plane landed in Atlanta, he went to the gatehouse from which his connecting flight would leave around 6:00 a. m. for Los Angeles. Agent Chapman approached him and asked if he could question him. Agent Chapman identified himself as a DEA agent. The pair walked into the corridor where defendant related to Chapman that he had been questioned and searched in Ft. Lauderdale. The testimony is contradictory as to whether defendant disclosed to Chapman his earlier refusal to allow a search of his blue suitcase or whether he told Chapman that the bag had been searched in Florida; because of the Court's disposition of other matters of law below, it is irrelevant whether defendant made this disclosure or whether he failed to tell Chapman the truth.

Defendant produced a California driver's license and his Delta ticket at Chapman's request. Chapman asked defendant if he would consent to a search of his person and the tote bag in his immediate possession, and the defendant consented. Agent Chapman returned defendant's driver's license and airplane ticket to him and then conducted a search of defendant and his tote bag in a nearby Delta office. Initially defendant did not produce two baggage claim checks and some keys in his pocket, claiming he forgot them because they were in a watch pocket; however, he did finally produce these items. The DEA agent found no contraband items on defendant or in his tote bag. When asked if he would consent to a search of the two suitcases which correlated to the claim checks in his pocket, he again consented to a search of the yellow one, but refused to consent to a search of the blue bag, contending that he did not have the authority to consent to a search of a bag that he carried for a friend.

The defendant then went downstairs with Agent Chapman who left the defendant with two Atlanta police officers in a police station. The defendant was not under arrest. Agent Chapman took the claim checks he had seized from defendant to Delta baggage personnel and requested them to remove defendant's two suitcases from either the airplane bound for Los Angeles on which defendant was ticketed, or an area awaiting the arrival of the plane that was to leave for Los Angeles.[1] Agent Chapman carried one of defendant's suit-

---

1. The evidentiary hearing transcript does not disclose whether the luggage had already been loaded onto defendant's plane bound for Los Angeles.

cases to the police station where he had left defendant, while a Delta employee carried the other. Both suitcases were locked.

Each suitcase had an identification tag attached to it bearing defendant's name.[2] Defendant allowed a search of his yellow suitcase and a loaded .38 caliber pistol was found inside. Agent Chapman unlocked the yellow suitcase with a key supplied him by the defendant. This search was conducted in the Atlanta police station at the airport in the presence of defendant, Agent Chapman, a Delta employee, and two Atlanta police officers. Agent Chapman, in the presence of the Delta employee, placed the keys he had seized from defendant on a desk in the Atlanta police station and told defendant that though the suitcase was for a friend of his, because he had custody and control of it he could consent to the opening of it. Agent Chapman told the defendant that the keys that had been found in his possession appeared to fit the lock on the blue suitcase. Defendant refused to consent to the search of the bag, again contending that although he was carrying it to Los Angeles, it belonged to a friend. The Delta employee asked defendant if the blue suitcase was his, to which defendant again made it clear that the bag was checked to him but that he could not consent to a search of it since it belonged to a friend.

The Delta agent who had carried one of defendant's two suitcases to the Atlanta police station then took the keys which Agent Chapman had placed on the desk and opened the blue suitcase. According to Agent Chapman, the Delta agent and his supervisor decided either to open the blue suitcase to learn who in fact it belonged to or they believed they could open it "based on the tariff laws." (Tr.19, 50). The blue suitcase contained marijuana, leading to the present charge against defendant of violating 21 U.S.C. § 841(a)(1).

**2.** The Court's determination that both of the suitcases had defendant's name on them does not arise out of a differing credibility judgment than that made by the Magistrate (see Magistrate's Report and Recommendation at p. 4), but rather it is directly based on Agent Chapman's testimony. While Agent Chapman initially testified that the blue suitcase contained no name tag (Tr.19), he later corrected that testimony when he refreshed his memory by reference to his written report of the arrest of defendant (Tr.60–61).

## FOURTH AMENDMENT CLAIMS

The Magistrate concluded that the defendant lacked standing on the facts as presented above to assert a Fourth Amendment claim because the defendant had no legitimate expectation of privacy in the blue suitcase. The Court, on the same facts, disagrees with the Magistrate and finds that under the law the defendant did have a legitimate expectation of privacy in the blue suitcase and that absent consent the suitcase could have been searched legally by a federal official only if done pursuant to a warrant. Because the Court finds standing it must reach a question the Magistrate did not, that being whether the search was one by a private individual or one by a federal official. As explained below, the Court finds the search to have been conducted by a federal official on the basis of the facts as outlined above.

Last term the United States Supreme Court in *United States v. Salvucci*, —— U.S. ·· ··, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980), held that defendants charged with crimes of possession can secure the benefits of the exclusionary rule only if their own Fourth Amendment rights have in fact been violated. This ruling overturned what has been termed the "automatic standing" rule as announced in *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), which had provided that when possession of the seized evidence was an essential element of the offense charged, a defendant did not need to establish that his own Fourth Amendment rights had been violated, but only that the search and seizure was unconstitutional. *See Brown v. United States*, 411 U.S. 223, 227–29, 93 S.Ct. 1565, 1568–1569, 36 L.Ed.2d 208 (1973). Also, last term, in *Rawlings v. Kentucky*, —— U.S. ·· ··, 100 S.Ct. 2556, 65 L.Ed.2d 633 (1980), the Court gave some indication of what is *not* now included within an individual's Fourth Amendment rights. The Court held

that an individual has no reasonable expectation of privacy in an acquaintance's purse and that ownership of property seized was insufficient by itself to invoke the protection of the amendment. *Id.* at 2562–64. Relying on these cases as well as *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), and *United States v. Canady*, 615 F.2d 694 (5th Cir. 1980), the government and the Magistrate believe the defendant herein lacks standing to assert Fourth Amendment claims.

While *Rakas* reaffirmed earlier holdings of *Jones v. United States*, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), and *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), that the question of whether an individual has a legitimate expectation of privacy ought not be controlled by arcane distinctions developed in property law, 439 U.S. at 149–50 n.17, 99 S.Ct. at 434 n.17, the Court also stated that "by focusing on legitimate expectations of privacy in Fourth Amendment jurisprudence, the Court has not altogether abandoned use of property concepts in determining the presence or absence of the privacy interests protected by that Amendment." *Id.* at 143–44 n.12, 99 S.Ct. at 430–431. Indeed, the Court in *Rakas* also stated: "One of the main rights attaching to property is the right to exclude others, *see* W. Blackstone, Commentaries, Book 2, ch. 1, and one who owns *or lawfully possesses or controls* property will in all likelihood have a legitimate expectation of privacy by virtue of this right to exclude. *Id.* (emphasis added).

The Court's duty, therefore, under *Salvucci* and *Rakas* is to determine if the defendant herein under the facts as outlined above had a legitimate expectation of privacy in the blue suitcase (1) on which he had placed his name, (2) to which he held the baggage claim check and key, and (3) which he at all times maintained was in his custody but which he could not allow to be searched because it was owned by someone else.

The case of *U. S. v. Canady*, 615 F.2d 694 (5th Cir. 1980), cited by the government, is of no assistance to the Court in making this determination because in that case the defendant totally abandoned the suitcase containing contraband drugs at the same time he disclaimed ownership in the bag. Nor is the Court's recent pronouncement in *Rawlings* helpful; there the illegal drugs which defendant sought to suppress were seized from a purse of an acquaintance of the defendant. The defendant had known the owner of the purse only a few days, had never sought or received access to the purse, and had no right to exclude other persons from access to the purse. 100 S.Ct. at 2561. The purse was in the possession of defendant's acquaintance when the illegal drugs owned by defendant were seized from it. *Id.* at 2558. Contrary to *Rawlings* the defendant in the case *sub judice* had possession and control of the blue suitcase when it was opened, and it belonged to a friend whom he had known for at least ten years. The defendant had a key to the locked suitcase in his personal possession.

The Court does, however, find guidance in the recent case of *Arkansas v. Sanders*, 442 U.S. 753, 99 S.Ct. 2586, 61 L.Ed.2d 235 (1979). In *Sanders* the police were told by a reliable informant that the defendant would arrive at the Little Rock, Arkansas, airport on an American Airlines flight at 3:45 p. m. carrying a green suitcase containing marijuana. After watching the defendant arrive, claim a green suitcase, place the suitcase in the trunk of a taxi and ride away in the taxi, the police gave chase and stopped the taxi. The driver opened his trunk and without the permission of the defendant the police opened the unlocked suitcase to find marijuana. While the Court found it clear that the police had ample probable cause to seize the suitcase, *Id.* at 761, 99 S.Ct. at 2591, the Court held that the police should have taken the suitcase, along with the defendant, to the police station and there obtained a warrant for the search. The Court was not persuaded by the government's argument that under *Chambers v. Maroney*, 399 U.S. 42, 90 S.Ct. 1975, 26 L.Ed.2d 419 (1970), if the police were entitled to seize the suitcase, they would then be entitled to search it. 442 U.S. at 765 n.14, 99 S.Ct. at 2594. Thus,

while probable cause existed in *Sanders* no exigent circumstances existed to justify the warrantless search. *See also United States v. Chadwick*, 433 U.S. 1, 97 S.Ct. 2476, 53 L.Ed.2d 538 (1977) (holding illegal a warrantless search of a locked footlocker that had been placed in trunk of waiting automobile).[3] Relying on *Sanders*, two federal appellate courts have found that a warrant should have been procured to search a taped cardboard box which smelled of marijuana, *United States v. Dien*, 609 F.2d 1038 (2d Cir. 1979), *adhered to*, 615 F.2d 10 (2d Cir. 1980), and to search a lawfully seized backpack in a lawfully stopped automobile, *United States v. Meier*, 602 F.2d 253 (10th Cir. 1979). While these cases do not deal specifically with the problem of defining "legitimate expectation of privacy," they do indirectly indicate some instances when a legitimate expectation of privacy in an object not on a defendant's person arises.

■ Relying on the cases examined above and particularly on the language in *Rakas* cited above, the Court must conclude that on the facts as developed in the evidentiary hearing and found by the Magistrate, defendant did indeed have a legitimate expectation of privacy in the blue suitcase which contained the marijuana. The facts the Court relies on in making this determination are (1) the defendant at all times told the government agents that the blue suitcase was in his possession for the purpose of transporting it to Los Angeles for a friend; (2) the defendant took the blue suitcase to the Ft. Lauderdale airport and checked it with the ticket he had purchased through to Los Angeles along with his own yellow suitcase; (3) the defendant's name was placed on the side of the blue suitcase; and (4) the defendant had a key to the suitcase on his person. The defendant did not contend he owned the suitcase, but under *Rakas* ownership is clearly unnecessary to find a legitimate expectation of privacy. Defendant did lawfully possess the suitcase and because he held the key to it he controlled the contents of it. Therefore, this Court declines to adopt the Magistrate's report and recommendation inasmuch as it fails to find standing and instead this Court finds that defendant has standing to assert a breach of his Fourth Amendment rights in the blue suitcase.[4]

Having found that the defendant has standing to assert his Fourth Amendment rights in the blue suitcase, the Court now turns to the question of whether the search of the suitcase was illegal under the Fourth Amendment. The Court must determine whether the opening of the blue suitcase was, in effect, a governmental search even though the person who unlocked and opened the bag was a Delta employee. If the search was a governmental one and if no exception to the Fourth Amendment's warrant requirement is applicable, then the search was illegal because no warrant was obtained.

■ The Fourth Amendment's warrant requirement, of course, is intended solely "as a restraint upon the activities of sovereign authority," *Burdeau v. McDowell*, 256 U.S. 465, 475, 41 S.Ct. 574, 576, 65 L.Ed.

---

**3.** In *Arkansas v. Sanders*, 442 U.S. 753, 766, 99 S.Ct. 2586, 2594, 61 L.Ed.2d 235 (1979), Chief Justice Burger, concurring, stated: "The essence of our holding in *United States v. Chadwick*, 433 U.S. 1 [97 S.Ct. 2476, 53 L.Ed.2d 538] (1977), is that there is a legitimate expectation of privacy in the contents of a trunk or suitcase accompanying or being carried by a person. . . ."

**4.** The case of *United States v. Klein*, 626 F.2d 22 (7th Cir. 1980) (affirmance without published opinion at 624 F.2d 1105), indicates what the DEA agents should have done here. In *Klein* a Ft. Lauderdale deputy sheriff spotted the defendants in a Florida airport and, determining that they looked suspicious due to their luggage and mannerisms, alerted federal agents in Chicago of defendants' impending arrival. Determining that they had reasonable suspicion that defendants were involved in illegal activity but not probable cause, the federal agents told defendants they could go, but their luggage would be detained. Because defendants were traveling under assumed names, told agents they had no tickets because they had been left on the plane, denied having keys to the suitcases they had checked, and "appeared" suspicious, a *warrant* was granted for the search of the luggage. Under those facts the Seventh Circuit upheld the trial court's denial of a motion to suppress.

1048 (1921), and "a search ... conducted by a private individual for purely private reasons does not fall within the protective ambit of the Fourth Amendment." *United States v. Lamar*, 545 F.2d 488, 489–90 (5th Cir. 1977). However, if under the circumstances of the case the private party acted as an instrument or agent of the government, the ostensibly private search must meet the amendment's standards. *Lustig v. United States*, 338 U.S. 74, 79, 69 S.Ct. 1372, 1374, 93 L.Ed. 1819 (1949). The decisive factor is the actuality of a share by a federal official in the total enterprise of securing and selecting evidence by other than sanctioned means. *Id.*

The Fifth Circuit cases closest to the one at bar found no governmental search where a bag was *left unclaimed* in an airport and then searched by an airplane employee in the presence of a police officer for purposes of *identification of the bag's owner. See United States v. Lamar*, 545 F.2d 488 (5th Cir. 1977) and *United States v. Blanton*, 479 F.2d 327 (5th Cir. 1973).

However, the Ninth Circuit in *United States v. Fannon*, 556 F.2d 961 (1977), held that searches by airline employees of packages deposited with the air carrier for shipment *were subject to the limitations of the Fourth Amendment*, even though the searches originated with and were conducted by airline employees acting alone, since the air carrier was authorized by the Air Transportation Security Act to conduct such searches as part of the government's air transportation security program, thus endowing the conduct of the carrier's employees with a governmental purpose and subjecting it to Fourth Amendment scrutiny.

In a somewhat similar case involving the search of passengers *boarding* airplanes, the Ninth Circuit noted the standard:

"[E]ven if governmental involvement at some point in the period could be characterized accurately as mere encouragement, or as peripheral, or ... one of several cooperative forces leading to the [alleged] constitutional violation that involvement would nevertheless be "significant" for purposes of the Fourth Amendment. Constitutional limitations on governmental action would be severly undercut if the government were allowed to actively encourage conduct by "private" persons or entities that is prohibited to the government itself.

*United States v. Davis*, 482 F.2d 893 (9th Cir. 1973).

■ In light of the guidance provided by the above-mentioned cases, the Court must determine the involvement of Agent Chapman in the total enterprise of securing and selecting the evidence which the defendant wishes to suppress. The contributions of Agent Chapman leading to the discovery of the marijuana were extensive. Had he not requested Delta employees to locate defendant's two checked suitcases, they would have been transferred to the airplane bound for Los Angeles for which defendant held a ticket; had he not placed the keys to the blue suitcase on a desk in front of the Delta agent and told the defendant in the Delta agents presence that the keys appeared to fit the lock on the suitcase, the Delta agent would not have had access to the contents of the suitcase without damaging the suitcase which was checked to a paying passenger; and had he not continued to request defendant to consent to a search of the suitcase in the Delta agent's presence the Delta agent may never have learned that a law enforcement officer wished to have the suitcase opened. In addition to these facts, the Delta agent who, according to Agent Chapman, opened the bag to learn who was the owner of it, knew that it was checked to defendant, that defendant's name was on it, that the keys to it were in his possession, and that defendant claimed a possessory interest in the bag.

In the Court's determination the Delta agent opened the bag at the unspoken, but real, encouragement of Agent Chapman, rendering the search of defendant's friend's blue suitcase a governmental search. Therefore, if no exception to the warrant requirement applies to this case, the search and seizure was illegal under the Fourth Amendment.

The government has failed to argue that any exception to the warrant requirement would justify this warrantless search. Under *Sanders* and *Chadwick* the Court fails to see how any argument could be fashioned that would qualify this case as falling into any category of exceptions to the warrant requirement. Therefore, the Court hereby DECLINES TO ADOPT the report and recommendation submitted by the United States Magistrate and accordingly GRANTS defendant's motion to suppress the evidence obtained through the illegal search and seizure of the blue suitcase.

Having made the above determination, the Court sees no need to rule on that portion of defendant's motion with respect to whether the initial questioning of defendant was an illegal seizure and whether he consented to a search of his person.