STATE OF HAWAII, Plaintiff-Appellee, *v.* ROBERT T. GUSTAFSON, Defendant-Appellant

NO. 5397

NOVEMBER 7, 1973

RICHARDSON, C.J., MARUMOTO, ABE, LEVINSON AND KOBAYASHI, JJ.

*Per Curiam.* Defendant-appellant struck a utility pole while driving an automobile on Kinau Street in Honolulu. The investigating police officer, believing appellant to be under the influence of alcohol, placed him under arrest and requested that he take a "breath or blood" test under the implied consent statute, HRS ch. 286. Upon his refusal to submit to a test, the officer executed and filed an affidavit with the magistrate of the district court of Honolulu as required by HRS § 286-155.[1] A hearing was held before the district judge pursuant to HRS § 286-156. At the hearing the district judge found the statements contained in the affidavit to be true and revoked appellant's license to operate a motor vehicle for a period of six months under the authority of HRS § 286-155.

---

[1]Magistrate is now entitled District Judge under Act 188, section 39, of the Session Laws of Hawaii 1970, effective January 1, 1972.

66

The appellant appealed to the circuit court of the first circuit. After a hearing the circuit court affirmed the ruling of the district court and the appellant appealed to this court.

## ISSUES

The following contentions raised on appeal by the appellant merit consideration by this court:

(1) that appellant was denied procedural due process because he was not provided with a copy of the arresting officer's affidavit prior to the hearing;

(2) that appellant was arrested without a warrant unlawfully and that said arrest was not made in accordance with the constitutional standard of probable cause.

## APPLICABLE STATUTES

HRS § 286-155 *Revocation of privilege to drive motor vehicle upon refusal to submit to testing.* If a person under arrest refuses to submit to a test of his breath or blood, none shall be given, but the arresting officer shall, as soon as practicable, submit an affidavit to a magistrate of the district in which the arrest was made, stating:

(1) That at the time of the arrest, he had reasonable grounds to believe the arrested person had either been driving or was in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor;

(2) That the arrested person had been informed of the sanctions of this section; and

(3) That the person had refused to submit to a test of his breath or blood.

Upon receipt of the affidavit, the magistrate shall hold a hearing as provided in section 286-156, and shall determine whether the statements contained in the affidavit are true and correct. If the magistrate finds the statements contained in the affidavit are true, he shall revoke the arrested person's license, permit, or any nonresident operating privilege for a period of six months.

If the arrested person is a resident without a license or permit to operate a motor vehicle in the State, the magistrate shall send notice of the results of the hearing to the examiners of chauffeurs of all counties. The examiners of chauffeurs shall deny the person the issuance of a license or permit for a period of six months.

The penalties provided by this section are additional penalties and not substitutes for any other penalties provided by law.

HRS § 286-156 *Hearing before a magistrate*. A hearing to determine the truth and correctness of an affidavit submitted to a matistrate shall be held within ten days after the magistrate has received the affidavit.

The magistrate shall hear and determine:

(1) Whether the arresting officer had reasonable grounds to believe that the person had been either driving or in actual physical control of a motor vehicle upon the public highways while under the influence of intoxicating liquor.

(2) Whether the person was lawfully arrested;

(3) Whether the arresting officer had informed the person of the sanctions of section 286-155; and

(4) Whether the person refused to submit to a test of his breath or blood.

## PROCEDURAL DUE PROCESS

Appellant's first contention raised by this appeal is that he was denied procedural due process when the prosecutor failed to provide the appellant with a copy of the arresting officer's affidavit within a reasonable time prior to the hearing so that appellant could adequately prepare his defense. Appellant's brief states that he was allowed only a glimpse of the affidavit and did not have sufficient time to read it thoroughly.

The requirements of procedural due process, as to notice and hearing, are so well established that additional dissertation in this opinion would be merely repetitious. *See Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306

(1950), *Walker v. City of Hutchinson,* 352 U.S. 112 (1956), *Silver v. Castle Memorial Hospital,* 53 Haw. 475, 497 P.2d 564 (1972), *Kim Poo Kum v. Sugiyama,* 33 Haw. 545 (1935).

However, in *Stafford v. Dickison,* 46 Haw. 52, 59-60, 374 P.2d 665, 670 (1962), we cited, with approval, *Link v. Wabash Railroad Co.,* 370 U.S. 626 (1962), to-wit:

> [T]he requirement of due process "does not mean that every order entered without notice and a preliminary adversary hearing offends due process. The adequacy of notice and hearing respecting proceeding that may affect a party's rights turns, to a considerable extent, on the knowledge which the circumstances show such party may be taken to have of the consequences of his own conduct."

HRS § 286-155 definitively provides what must be stated in the affidavit and thus forewarns and gives appellant notice as to the contents of the affidavit. HRS § 286-156 then provides for a hearing to determine the truth and correctness of the statements in the affidavit and specifically delineates the issues that the district judge shall hear and determine. And though appellant was not served with a copy of the affidavit days prior to the date of hearing, since the provisions of HRS § 286-155 make it clear to the appellant what the affidavit must necessarily state and the appellant is further protected against surprise as to the scope of the hearing under HRS § 286-156, we are of the opinion that the relevant statutes are clear, unambiguous and provide the necessary constitutional procedural due process safeguards.

### LAWFUL ARREST

Appellant's final contention is that his arrest was unlawful in that there was no probable cause for the arresting officer to have made the arrest without a warrant. He further contends that, since HRS § 286-155 is only applicable after a lawful arrest, he should not have been required to submit to the "breath or blood" test.

The record indicates the following facts. When the arresting officer arrived at the arrest site, he observed that

appellant's car was damaged; that appellant was very unsteady on his feet and that he had a small cut on his lip. The officer then asked the appellant whether he had been involved in an automobile accident to which the appellant answered affirmatively. The appellant was then advised of his constitutional rights and responded that he was a lawyer and that he knew them. While engaged in this conversation the officer smelled alcohol on the appellant's breath. The arresting officer then asked appellant if he had taken any intoxicating liquor and the appellant responded that he was not required to answer this question. The appellant then described to the arresting officer the circumstances of the accident by stating that he was on his way home at a rate of approximately fifteen miles per hour. Appellant stated that he was tired and that he had struck an unidentified telephone pole. At this point the officer placed the appellant under arrest.

In *State v. Texeira*, 50 Haw. 138, 142, 433 P.2d 593, 597 (1967), this court cited *Carroll v. United States*, 267 U.S. 132 (1925), in which case the United States Supreme Court stated:

Officers have probable cause to make an arrest when the facts and circumstances within their knowledge and of which they had reasonably trustworthy information were sufficient in themselves to warrant a man of reasonable caution in the belief that [a crime was being committed].

In *State v. Chong*, 52 Haw. 226, 231, 473 P.2d 567, 571 (1970), we cited *People v. Scott*, 259 Cal. App. 2d 268, 66 Cal. Rptr. 257 (1968), with approval:

[P]robable cause [to arrest] is generally based upon a combination of factors, which together form a sort of mosaic, of which any one piece by itself often might not be enough to constitute probable cause, but which, when viewed as a whole, does constitute probable cause.

Based on the facts and circumstances put forth in the record, we are of the opinion that the arresting officer had probable cause to arrest appellant for the charges involved

70

herein and that the subsequent request that he submit to the "breath or blood" test was lawful.[2]

The other issues raised by appellant are without merit.

The judgment of the circuit court is affirmed.

*Robert T. Gustafson*, defendant-appellant, pro se.

*Adrienne Sepaniak*, Deputy Prosecuting Attorney (*Barry Chung*, Prosecuting Attorney, with her on the brief) for plaintiff-appellee.

LEVINSON, J., CONCURRING IN PART
AND DISSENTING IN PART

I am in agreement with that portion of the majority opinion which holds that a prerequisite to the applicability of the license suspension or revocation statute, HRS § 286-155, is the presence of an arrest premised on facts which meet the probable cause standard, not the less rigorous and constitutionally questionable standard of "reasonable suspicion" set out in the Hawaii statute authorizing warrantless arrests in general, HRS § 708-5. I agree, further, that on the record of this case there exists ample evidence from which the district judge could have concluded that appellant's warrantless arrest was executed pursuant to probable cause as that concept was defined in *Carroll v. United States*, 267 U.S. 132, 162 (1925).

However, I dissent from the conclusion of the majority that the failure of the district court to provide appellant with a copy of the arresting officer's affidavit prior to the hearing on

---

[2]The appellant further contends that the officer, relying on HRS § 708-5, which reads:

§708-5, *By policeman without warrant.* Policemen, or other officers of justice, in any seaport or town, even in cases where it is not certain that an offense has been committed, may, without warrant, arrest and detain for examination such persons as may be found under such circumstances as justify a reasonable suspicion that they have committed or intend to commit an offense,

arrested appellant on reasonable suspicion and thus the arrest was unlawful. Appellant also maintains that said HRS § 708-5 is unconstitutional because it allows arrest without warrant based upon "reasonable suspicion". Since it is not necessary to construe HRS 708-5 for the resolution of the instant case, we dispose of appellant's contention by stating that arrest without warrant must be premised on probable cause.

whether appellant's license should have been suspended or revoked did not constitute a denial of his procedural rights. It is my opinion that the district court was under a statutory mandate to afford appellant a copy of the affidavit by virtue of section 91-9 of the Hawaii Administrative Procedure Act, HRS ch. 91. Moreover, in light of the special nature of the hearing at issue in this case, it is my view that the district court should have provided appellant with a copy of the affidavit as part of its constitutional responsibility to conform its procedures to due process of law. I structure this opinion separately along these two major lines of analysis.

## I. THE APPLICABILITY OF THE HAWAII ADMINISTRATIVE PROCEDURE ACT

In *State v. Gustafson,* 54 Haw. 519, 520, 511 P.2d 161, 162 (1973), the same case which is before us now, this court held that "proceedings to revoke a driver's license for drunken driving where a driver refuses to take a 'breath or blood test' under the implied consent statute *is treated as a hearing before an administrative officer.*" (Emphasis added). That holding was necessary to support our appellate jurisdiction under HRS § 286-157, which provides for appeals from license suspension or revocation orders entered pursuant to HRS § 286-155, "in the manner provided in [HRS §] 286-129.'' HRS § 286-129, in turn, allows appeals to the circuit court by applicants who are denied licenses by the examiner of chauffeurs, and declares that the decision of the circuit court on review "shall be final except as otherwise provided in [HRS ch.] 91.'' Finally, section 91-15 of HRS ch. 91 (the Hawaii Administrative Procedure Act) provides in part that "[a]n aggrieved party may secure a review of any final judgment of the circuit court under this chapter by appeal to the supreme court.'' In the process of tracing our appellate jurisdiction directly through the only section expressly providing for review of suspension or revocation orders, HRS § 286-157, we concluded that the legislative intent in enacting HRS §§ 286-155 to 156 was to "treat" hearings held pursuant to those sections as administrative in

nature. Of course, district judges are judicial officers, and as such may not constitutionally or statutorily sit as administrative officers created by and under the authority of the legislative or executive branches.[1] However, it is within the province of the legislature to provide for the formulation of procedural rules by which proceedings before a judicial officer sitting as such are to be regulated. *See Sibbach v. Wilson & Co.*, 312 U.S. 1, 9 (1941).

The first *Gustafson* case stands for the proposition that a district court hearing under HRS §§ 286-155 to 156 is reviewable under procedures established for the review of administrative proceedings. In my opinion, the reasoning of that case also extends to the procedures applicable at the district court hearing itself, and therefore I would hold that HRS § 91-9, which sets out the rules for conducting administrative adjudications, likewise establishes the procedural norms by which hearings under HRS §§ 286-155 to 156 are to be held.

I am drawn to this conclusion for several reasons. First, the contours of the hearing outlined in HRS § 286-156 are wholly substantive, and that section is silent as to the procedures to be employed by the district judge.[2] Since it is doubtful that the Hawaii District Court Rules of Civil Procedure apply to license suspension or revocation hearings under section 286-156,[3] the procedures set out in HRS § 91-9 appear to be a natural source from which the legislature could

---

[1] HAWAII CONST. art. V; HRS § 601-5 ("The judiciary department and the several judges and other judicial officers thereof shall be independent of both the executive and legislative departments"); *cf.* National Mut. Ins. Co. *v.* Tidewater Transfer Co., 337 U.S. 582, 626, at 640 (1949) (Vinson, C.J., dissenting, but expressing an opinion on this issue in which a majority of the Court concurred) ("[A] long line of cases . . . prohibit[s] the intermixture or combination of the personnel, powers, or duties of constitutional and legislative courts" in the federal system).

[2] The text of HRS § 286-156 is quoted in the majority opinion at pp. 2-3.

[3] The District Court Rules are applicable only to "suits of a civil nature", HAWAII DIS. CT. R. CIV. P. 1. While a license suspension or revocation hearing is not a criminal action, neither does it appear to be a civil action. Under HAWAII DIS. CT. R. CIV. P. 3(a), "[a] civil action is commenced by filing a complaint with the court," whereas proceedings under HRS § 286-155 are initiated "[u]pon receipt of the [arresting officer's] affidavit" by the district court. Moreover, HRS § 286-155 uses the term "penalties" in referring to the sanctions imposed by the district judge under that section, an indication that, at best, the process of license suspension or revocation is a hybrid of civil and criminal proceedings. *See also* HRS § 286-159.

have intended that the district court draw its procedural guidelines, especially in view of the highly "administrative" nature of the task which the district judge performs under HRS §§ 286-155 to 156.[4] Second, proof of a defendant's refusal to submit to a "breath or blood" test is admissible "only in a *hearing* under section 286-156 or appeal thereof and . . . not . . . in any other *action or proceeding, whether civil or criminal*" HRS § 286-159 (emphasis added), indicating a legislative intention to draw a distinction between a section 286-156 "hearing" and all other "action[s] or proceeding[s]." Third, and finally, by providing for appeals of section 286-155 orders "in the manner" of appeals from the clearly administrative determination of the examiner of chauffeurs, HRS § 286-157, the legislature intentionally created a parity between the two decision-making processes which in logic extends beyond the correlation solely of procedures for their review. *See State v. Gustafson, supra* at 520, 511 P.2d at 162.

Although the term "agency" is defined in HRS § 91-1(1) to exclude members of the "judicial branch," this alone does not dissuade me from the view that the hearing requirements of HRS § 91-9 extend to adjudications under sections 286-155 to 156. The appeals provision of chapter 91, HRS § 91-15, is made applicable to such adjudications by virtue of HRS § 286-157 & §286-129 notwithstanding the fact that by its terms section 91-15 operates only to "secure a review [by the supreme court] of any final judgment of the circuit court *under this chapter*" (emphasis added) (*i.e.*, the final judgment of a circuit court with respect to an "agency"

---

[4]In A. ANTONY, SUSPENSION AND REVOCATION OF DRIVERS' LICENSES: A COMPARATIVE STUDY OF STATE LAWS 54 (1961), it is reported that out of 51 United States jurisdictions (including the District of Columbia), 22 authorize or require the suspension or revocation of licenses in the first instance by courts, while in 29 jurisdictions administrative agencies have exclusive initial jurisdiction. Moreover, in only five states does the primary responsibility for license suspension or revocation rest with the judicial system. *Id.* at 8. This data lends support to the conclusion that the overall process for the determination of automobile driver qualifications, including the suspension or revocation of licenses for various reasons, is fundamentally and functionally administrative in nature. *See* State *v.* Moyers, 86 Okla. Crim. 101, 189 P.2d 952 (1948) (suspension or revocation of drivers' licenses is in the nature of executive or administrative action, not judicial action); *accord,* Commonwealth *v.* Cronin, 336 Pa. 469, 9 A.2d 408 (1939). *See generally* K. DAVIS, ADMINISTRATIVE LAW TREATISE § 1.05 (1958).

hearing). Furthermore, as I indicated previously, the legislature is free to make specific procedures applicable to judicial determinations, even though those procedures apply also to administrative agency adjudications, so long as the constitutional independence of the courts is left intact in all other respects.

Turning to the procedural requirements of HRS § 91-9, a prerequisite to a hearing under that section is the provision of "reasonable notice" to the parties. The term "reasonable notice" is defined in section 91-9 (b) to include, among other things, "[a]n *explicit statement* in plain language of the issues involved and the *facts alleged* by the agency in support thereof; provided, that if the agency is unable to state such issues and facts *in detail* at the time the notice is served, the initial notice may be limited to a statement of the *issues* involved, and thereafter upon application a bill of particulars shall be furnished." (Emphasis added). This section provides individuals whose legal rights are adjudicated in an administrative proceeding as complete a forewarning as possible of the issues they must meet *and* the facts alleged against them. Unless the agency is unable to do so, the notice must in function constitute a bill of particulars—*i.e.*, it must reveal the facts and circumstances at the heart of the proceeding. Its objective is clearly to provide for basic procedural fairness, as that concept was expounded by this court in *Silver v. Castle Memorial Hospital*, 53 Haw. 475, 497 P.2d 564 (1972), *cert. denied*, 409 U.S. 1048 (1972), *reh. denied*, 409 U.S. 1131 (1973).

In the context of license suspension or revocation hearings under HRS §§ 286-155 to 156, the requirements of section 91-9 are of particular importance. The inquiry of the district judge in such hearings is channeled exclusively towards a determination of the "truth and correctness of [the arresting officer's] affidavit." The district judge in this case treated the hearing as involving solely the issue of the veracity of the affidavit, and in doing so refused to admit evidence supporting the existence of probable .cause for appellant's arrest which went beyond the affidavit. In view of the impórtance of this document as the focal point of the hearing,

I cannot agree with the unspoken conclusion of the majority that HRS § 91-9, in providing for the pre-hearing divulgence of "facts" alleged against a party, does not require that a copy of it should have been served on the appellant sufficiently anterior in time to the hearing to enable him properly to prepare a defense. Compare K. DAVIS, ADMINISTRATIVE LAW TREATISE § 8.05 (1958).

Moreover, the facts of this case do not bear out the reasoning of the majority that "the provisions of HRS § 286-155 make it clear to the appellant what the affidavit must necessarily state," and therefore that he need not have been served with it prior to the hearing. The affidavit against appellant reads as follows:

I, *Gary T. S. Au*, police officer, being first duly sworn on oath, do depose and say:

1. That I arrested *Robert T. Gustafson* at *2315* o'clock *P.M.* on *June 2, 1972 on KINAU STREET approx. 1/10th mile Ewa of WARD AVE.*

2. I had reasonable grounds to believe that *Robert T. Gustafson* had either been driving or was in actual physical control of a motor vehicle on a public highway; to wit: *a 1971 Datsun, 4 dr. sedan, green in color, license No. 8C-3112. Vehicle being operated by the above named person, Robert T. Gustafson, while under the influence of intoxicating beverage. Gustafson, while headed in the kokohead direction on Kinau Street, veered off to the right side of the road and struck a fixed object, a telephone pole No. 6.*

3. At the time I arrested *Robert T. Gustafson*, I had reasonable grounds to believe he was under the influence of alcohol; to wit: *upon confronting him, there was a smell of intoxicating liquor upon his breath, his speech was slurred, and he was very unsteady on his feet.*

4. I informed *Robert T. Gustafson* that he had a choice of chemical tests to take to determine the amount of alcohol contained in his blood. He could either take a blood or breath test, and if he refused to take a blood or breath test, any operator's or

chauffeur's license, instruction permit or non-resident driving privilege which he possessed may be revoked for six months by a magistrate after a hearing.

5. After I informed *Robert T. Gustafson* of his choice to take a blood or breath test and of a possible revocation of his driving privileges, he refused to take any chemical tests.

Although the affidavit was prepared on a mimeographed form, that form leaves numerous blank spaces, into which the italicized portions quoted above were individually typed by officer Au. As is evident from an examination of these portions of the affidavit, significant *facts* are revealed which are unique to appellant's case and which are impossible to glean from the bare language of section 286-155. These facts could well have provided appellant with the leads necessary to establish with greater forcefulness his chief defense that officer Au was unwarranted in drawing the conclusion that he was intoxicated.[5] Since appellant saw the affidavit only a few minutes before trial, this opportunity was lost to him. It follows that the hearing by which his license was suspended might well have had a different outcome if proper procedures as detailed in HRS § 91-9 had been followed.

Accordingly, I would reverse the order suspending appellant's license, on the ground of non-compliance by the district court with the procedures contained in the aforementioned statute in failing as a matter of course to provide appellant with the arresting officer's affidavit, and would remand the case for a new hearing.

## II. PROCEDURAL DUE PROCESS

The majority apparently does not quarrel with the basic proposition that "[o]nce [drivers'] licenses are issued . . .

---

[5]Indeed, officer Au's name alone was significant in this regard, since it might have afforded appellant an opportunity to interview Au prior to the hearing and thus inquire more deeply into the latter's perception of the incident at issue. It cannot be assumed that appellant was already aware of the name of his arresting officer, since according to appellant the accident left him dazed and hence incapable of rational responses.

their continued possession may become essential in the pursuit of a livelihood. Suspension of issued licenses thus involves state action that adjudicates important interests of the licensees. In such cases the licenses are not to be taken away without that procedural due process required by the Fourteenth Amendment.'' *Bell v. Burson,* 402 U.S. 535, 539 (1971); *see Jennings v. Mahoney,* 404 U.S. 25 (1971) (per curiam). There is a great deal of overlap between the procedural due process required by the State and Federal Constitutions and the procedural norms of the Hawaii Administrative Procedure Act, *Mortensen v. Trustees of the Employees' Retirement System,* 52 Haw. 212, 473 P.2d 866 (1970), and therefore the considerations of basic fairness noted already in this opinion under the rubric of HRS § 91-9 apply with similar force here.

It is my opinion that *Silver V. Castle Memorial Hospital,* 53 Haw. 475, 497 P.2d 564 (1972) controls the disposition of this case with respect to the requirements of procedural due process. In *Silver,* this court held that a private hospital receiving some state and federal financial assistance could not deny surgical privileges to a physician licensed to practice medicine in Hawaii without first conducting a hearing at which the rudiments of procedural due process were followed. The court noted that in the circumstances the procedural rights of the applying physician were not rigid, but resulted from balancing the physician's right to a fair and impartial determination of the facts and the hospital's need for an expeditious determination of matters which necessarily affected the quality of the health care it provided.

The product of this balancing should have been a hearing at which as a minimum the procedural rights of the physician would include the following:

The doctor should be on notice that a hearing is available to him. He should be given timely notification sufficiently prior to the hearing for him to adequately prepare a defense. *In conjunction with such notice, a doctor whose privileges are being revoked or who is being denied reappointment should be provided a written statement of the charges against him. Such statement should be*

*sufficiently adequate to apprise him of the specific charges against him.* A doctor who is being denied initial appointment to a hospital staff should be provided a written statement specifying the reasons his application is being denied.

*Id.* at 485, 497 P.2d at 571 (emphasis added). In reviewing the procedures in fact followed by the hospital in denying surgical privileges to the appellant Silver, the court found them constitutionally deficient for the following reasons:

[I]n this case, prior to the termination of appellant's privileges, appellant was never provided with specific written charges as to why his performance was not deemed acceptable. He was merely read an indictment of general allegations at the hearing. *In order for appellant's right to a hearing to be effective he must have been apprised of the particulars of the specific claims against him prior to the hearing.* In this case appellant had no *opportunity to investigate* the basis for his performance being questioned. As such his right to present a defense was rendered nugatory.

*Id.* at 486, 497 P.2d at 572 (emphasis added).

The applicability of *Silver* to the facts of this case is clear. The hearing held pursuant to HRS § 286-155 to 156 dealt exclusively with the accuracy of the arresting officer's affidavit. As noted previously in this opinion, the affidavit contained facts and circumstances which were unique to appellant's case and which, if revealed to him sufficiently prior in time to the hearing, might well have enabled him to strengthen his defense. Moreover, there is no countervailing government interest which cuts against pre-hearing service of the affidavit as a matter of course — the affidavit is a one-page document which is easily copied and just as easily includable with the initial service of process on those whose license to drive is subject to scrutiny under HRS §§ 286-155 to 156

*Stafford v. Dickison,* 46 Haw. 52, 374 P.2d 665 (1962) cited by the majority for the notion that procedural due process is a flexible concept, also stands for the proposition that the true litmus test of due process is whether a meaningful

opportunity to defend was afforded.[6] The pre-hearing provision of the arresting officer's affidavit would have been as a practical matter extremely facile in this case, and the nature of the proceedings under HRS § 286-155 to 156 and the contents of the affidavit made such provision crucial in allowing the appellant a meaningful opportunity to defend. I would hold that the procedural due process rights of the appellant were violated when he was forced to defend against the suspension of his license without having had a previous opportunity to study the affidavit — the very document upon which the proceedings against him turned. In my opinion, this conclusion follows inexorably from the general proposition that "[t]he hearing required by the Due Process Clause must be 'meaningful,' *Armstrong v. Manzo*, 380 U.S. 545, 552 (1965), and 'appropriate to the nature of the case.' *Mullane v. Central Hanover Bank & Trust Co.*, [339 U.S. 306, 313 (1950)]." *Bell v. Burson, supra* at 541-42.

---

[6]*Stafford* held that a plaintiff's failure to notify the defendant of an *application* for a default judgment in a suit in which the defendant had entered a general appearance was not in itself a denial of due process. However, the court went on to hold that the trial court's failure to notify the defendant of the actual *entry* of the default and of his right to challenge it within a limited time period did constitute a procedural defect of a magnitude sufficient to render the judgment void. 46 Haw. at 61, 374 P.2d at 670. *Stafford* thus makes clear that the essence of due process is the "opportunity to defend." *Id.*