STATE OF HAWAII, Plaintiff-Appellant, *v.* HENRY DIAS, LEONARD MAU, COLIN LUM, JERRY KAICHI, WILLIAM ENGLISH, ROBERT THOMAS, ABRAHAM AHMAD, HIROO TERAMAE, GONRADO MADANAY, JAMES LAU, PHILLIP PALENCIA, Defendants-Appellees

NO. 6558

APRIL 10, 1980

RICHARDSON, C.J., OGATA, MENOR, JJ., AND RETIRED JUSTICES MARUMOTO AND KOBAYASHI ASSIGNED BY REASON OF VACANCIES

OPINION OF THE COURT BY MENOR, J.

This is an appeal by the State from the trial court's order granting the defendants' motion to suppress evidence of gambling activity.

Acting on information received from an unnamed informant that a gambling game was in progress in a shack on Sand Island, Officer Pedro proceeded to the area known as "Squatters' Row," arriving there at approximately 11:05 p.m. After leaving his car, he walked over to a structure built on stilts and attached to the side of an old bus. The shack was well-lighted and parked nearby were 15-20 automobiles. As the officer approached the building, he heard words that he associated with what he referred to as a "game of craps." Standing at arm's length from the split doorway of the building, he was able to see a gaming table through a two to three-inch gap between the two doors. He immediately entered, without prior announcement,[1] and arrested the defendants. The de-

---

[1] The defendants have not raised the question of whether HRS § 803-11 was violated by the officer under the circumstances. The statute provides:

Whenever it is necessary to enter a house to arrest an offender, and entrance is refused, the officer or person making the arrest may force an entrance by

fendants, who had been charged with gambling, moved to suppress Officer Pedro's testimony in its entirety and the trial court granted the motion. We affirm the order of suppression in part and reverse in part.

Initially, we take judicial notice of the fact that Sand Island upon which the shack was situated is the property of the State of Hawaii. The occupants of the structure were, therefore, squatters on government property. And in this connection, it has been held that squatters are not protected by the Fourth Amendment protection against warrantless searches and seizures. *Amezquita v. Hernandez-Colon*, 518 F.2d 8 (1st Cir. 1975). In *Amezquita* a group of squatters had occupied part of a farm owned by the Commonwealth of Puerto Rico. They built their homes on the land and were living on the premises when, less than three months later, government agents moved in with bulldozers and began demolishing buildings which they found to be uninhabited. On two prior occasions the squatters had been requested by the government to remove themselves voluntarily from the property. One of the issues before the court was whether the government had the unfettered right to go "looking into and poking through" the homes of some of the squatters without prior judicial authorization. In holding that the squatters had no reasonable expectation of privacy in the dwellings they had erected without the permission of the government, the First Circuit Court of Appeals observed:

> Nothing in the record suggests that the squatters' entry upon the land was sanctioned in any way by the Commonwealth. The plaintiffs knew they had no colorable claim to occupy the land; in fact, they had been asked twice by Commonwealth officials to depart voluntarily. That fact alone makes ludicrous any claim that they had a reasonable expectation of privacy. 518 F.2d at 11.

---

breaking doors or other barriers. But before breaking any door, he shall first demand entrance in a loud voice, and state that he is the bearer of a warrant of arrest; or if it is in a case in which arrest is lawful without warrant, he shall substantially state that information in an audible voice.

In determining whether the defendants in the present case had a reasonable expectation of privacy in the area searched, a two-fold test is to be applied: (1) whether they had exhibited an actual expectation of privacy, and (2) whether the expectation was one which society would deem to be reasonable. *State v. Kaaheena,* 59 Haw. 23, 575 P.2d 462 (1978); *State v. Stachler,* 58 Haw. 412, 570 P.2d 1323 (1977). A man's dwelling, generally, is a place where he expects privacy, and except as to conduct, objects, and statements which he knowingly exposes to public view, he will be deemed to have exhibited an actual expectation of privacy therein. *See United States v. Botelho,* 360 F.Supp. 620 (D. Haw. 1973). This expectation, however, must be one which is recognized by society to be reasonable, and under *Amezquita* the defendants would be foreclosed from asserting privacy claims under the Fourth Amendment. But while we agree with the basic rule adopted by the court in that case, there are other circumstances here which impel us to reach a different result. In so doing, we have taken judicial notice of the fact that "Squatters' Row" on Sand Island has been allowed to exist by sufferance of the State for a considerable period of time. And although no tenancy under property concepts was thereby created, we think that this long acquiescence by the government has given rise to a reasonable expectation of privacy on the part of the defendants, at least with respect to the interior of the building itself. This, we think is consistent not only with reason but also with our traditional notions of fair play and justice.

This particular finding, however, does not end our inquiry. The defendants may not now complain of the conduct of Officer Pedro in walking up as close to the shack as he did. While they were entitled to their privacy within the building, they did not have exclusive rights to the land upon which it was situated. This was public property, and they had no right to expect that members of the public, including curious passersby, might not approach as close to the shack as the officer did in this case. *Cf. State v. Hook,* 60 Haw. 197, 587 P.2d 1224 (1978); *Ponce v. Craven,* 409 F.2d 621 (9th Cir. 1969). Standing at arm's length from the shack, the officer was able to see into

the interior of the building. The gap between the two sections of the doorway was wide enough to enable the officer to observe without any difficulty the prohibited activity which was taking place within the premises. Even before reaching his vantage point, he was able to hear voices and sounds associated with gambling activity. And what a person knowingly exposes to the view and hearing of outsiders is not a subject of Fourth Amendment protection. *Katz v. United States*, 389 U.S. 347 (1967); *State v. Texeira*, S. C. No. 6133, decided March 31, 1980. If the defendants did not wish to be observed, they could have covered the opening in the split doorway. If they did not wish to be overheard, they could have comported themselves accordingly. Conduct open to view and conversations audible to persons standing outside of a building constitute activities knowingly exposed to the public. *Ponce v. Craven, supra.* Accordingly, we hold that as to the visual and aural observations made by Officer Pedro from outside the building, the motion to suppress was improvidently granted. He could testify to what he saw and heard. *State v. Texeira, supra.*

Evidence obtained following the warrantless entry, however, was properly suppressed. Absent exigent circumstances, the police may not enter a private building or dwelling without either a search warrant or a warrant of arrest. *State v. Texeira, supra; State v. Lloyd,* 61 Haw. 505, 606 P.2d 913 (1980). Exigent circumstances exist when immediate police action is required to prevent imminent danger to life or serious damage to property, or to forestall the likely escape of a suspect or the threatened removal or destruction of evidence.[2] *Id.* If, for example, the delay occasioned by the application for, and the issuance of, a warrant would likely result in the escape of a suspect or the removal or destruction of evidence, the police would be authorized to proceed without a warrant. But the justification for the warrantless entry

---

[2] Exigent circumstances, however, may not be the product of police conduct designed for the sole purpose of circumventing the warrant requirement. United States v. Santana, 427 U.S. 38, 49 (1976) (Marshall, J., dissenting); State v. Texeira, *supra.*

must rest on more than their subjective belief that escape or destruction of evidence was imminent. *United States v. Brewer*, 343 F.Supp. 468 (D. Haw. 1972). The police must be able to point to specific and articulable facts from which it may be determined that the action they took was necessitated by the exigencies of the situation. In *State v. Lloyd, supra,* the police were faced with conditions which are illustrative. There the defendant was suspected of being in possession of contraband. After seeing him pick up a box allegedly containing marijuana at the airport, the police followed him to his residence. Two of the officers then walked to his front door, knocked, and identified themselves as police officers. Immediately thereafter, they heard persons inside "scurrying about" and then a loud "crashing sound" towards the back of the house. The conduct of the occupants was clearly indicative of flight, and this court held that in the circumstances the warrantless entry was justified.

Whether conditions were such as to authorize the police to by-pass the warrant requirement must, of course, necessarily depend upon the facts of the particular case. But the burden is always on the government to show that the conduct of its agents fell within the exception. *Katz v. United States, supra; Vale v. Louisiana,* 399 U.S. 30 (1970); *United States v. Brewer, supra.* In the case before us, no such showing has been made.

Here, as in *Texeira,* the information that gambling was in progress at a given location came from a known and reliable police informant. On the basis of the latter's report, the police might have immediately begun the initial preparations for a search or arrest warrant. Instead, Officer Pedro proceeded directly to Sand Island, arriving there shortly after 11:00 p.m., where he made his own observations. Even then, he might have transmitted this information to headquarters or to other police officers to enable them to apply for a warrant. The game was still in progress, and there was no indication that the game was about to break up or that the players were about to disperse. None of the players was aware of the officer's presence, and as far as the record shows he was in no danger of being discovered. *See United States v. Curran,* 498 F.2d 30 (9th Cir. 1974). In short, there was absolutely no

showing by the State that it would have been impracticable for the police to obtain a warrant, or that the delay attendant upon obtaining prior judicial approval would have likely resulted in the escape of the defendants or the removal or destruction of evidence. *State v. Texeira, supra.* And as we pointed out in *Texeira,* mere inconvenience to the police, or to the judge to whom the application for a warrant is presented, is never a valid reason for by-passing the warrant requirement.

> [T]he point of the Fourth Amendment, which often is not grasped by zealous officers, is not that it denies law enforcement the usual inferences which reasonable men draw from the evidence. Its protection consists in requiring that those inferences be drawn by a neutral and detached magistrate instead of being judged by the officer engaged in the often competitive enterprise of ferreting out crime. Any assumption that evidence sufficient to support a magistrate's disinterested determination to issue a search warrant will justify the officers in making a search without a warrant would reduce the Amendment to a nullity and leave the people's homes secure only in the discretion of police officers. *Johnson v. United States,* 333 U.S. 10, 13-14 (1947).

Reversed in part and affirmed in part, and remanded for further proceedings consistent with this opinion.

*Arthur E. Ross,* Deputy Prosecuting Attorney for plaintiff-appellant.

*Myles Yamamoto,* Special Deputy Public Defender and *Anson O. Rego* for defendants-appellees.