STATE OF HAWAII, Plaintiff-Appellant, *v.* RICHARD S. ROSBOROUGH, Defendant-Appellee

NO. 6982

JULY 11, 1980

RICHARDSON, C.J., OGATA, MENOR, LUM AND NAKAMURA, JJ.

OPINION OF THE COURT BY OGATA, J.

Defendant-appellee Richard S. Rosborough (appellee) was charged with possession of more than 2.2 pounds of marijuana, in violation of HRS § 712-1247(1)(e) (1976) and with possession of marijuana in any amount in violation of HRS § 712-1249 (1976). The State of Hawaii (State) appeals from the granting of appellee's motion to suppress marijuana discovered in a footlocker and in a matchbox on his person. We affirm.

I.

The essential facts are not in dispute. On September 21, 1977, in Los Angeles, at about 10:30 p.m., a Western Airlines cargo handler detected a strong chemical odor from a footlocker which he was preparing to load. He opened the locker

and discovered what appeared to be marijuana. The chemical odor emanated from two plastic air fresheners, an apparent attempt to disguise the scent of marijuana. The airport office of the Narcotics Detail of the Los Angeles Police Department was notified. Detective McGraff responded and confirmed that the content of the footlocker was marijuana. The locker was closed and sent on to the named addressee Rosborough in Hawaii.

The following morning, on September 22, 1977, a Thursday, Detective McGraff called the Narcotics Detail of the Honolulu Police Department. The phone call was received at 8:10 a.m. He informed Honolulu police that a black footlocker was enroute to Honolulu to be picked up by Dick Rosborough, 59-408 Pupukea Road. The footlocker was scheduled to arrive on Flight 501, Western Airlines at 2:30 p.m. that day. At 2 o'clock p.m. police officers went to the Western Airlines Cargo Facility at Honolulu International Airport and requested and received the assistance of the assistant manager of the Western Airlines cargo and luggage section. At 2:35 p.m., Flight 501 arrived and the footlocker was unloaded. At 3:25 p.m., the assistant manager of the cargo facility called Rosborough and informed him that an item was ready for pick-up. Rosborough explained that he did not have a vehicle and did not know when he could pick up the cargo. Police officers maintained continued surveillance of the footlocker. At 9:30 p.m. that night, Rosborough arrived at the Western Airlines Customer Service Office and identified himself. The footlocker was turned over to Rosborough who then placed the footlocker in the rear seat of his car. A police officer approached appellee. Rosborough asked him if there was a restroom on the premises and the officer directed him to the nearest one. Upon his exit from the restroom, Rosborough was arrested in the lobby area for promoting a detrimental drug in the first degree. The arresting officer then extracted a "Diamond" safety match box from appellee's right front pants pocket. He opened the match box and found marijuana. Appellee was again arrested, this time for promoting a detrimental drug in the third degree. Immediately following the search of the match box, the police conducted a warrantless

search of the footlocker. The location of the footlocker at the time of appellee's arrest and the search of its contents is unclear, but whether it was searched in the car or upon its removal from the car is immaterial, as it was clearly under the police officer's exclusive control at the time of the search. The footlocker is described in the police evidence report as "one blue footlocker with gold colored metal latches, rivets and corners. Size of locker: 16 in. by 17 in. by 31 in. The locker is locked with a combination padlock. The footlocker has leather straps on each end of the footlocker."

## II.

The trial court found it unnecessary to rule on the warrantless search of the footlocker as it found that the search by the Western Airlines employee was a search subject to the Fourth Amendment, and that it was unreasonable, following *United States v. Fannon*, 556 F.2d 961 (9th Cir. 1977). While this appeal was pending, however, the Ninth Circuit Court of Appeals reversed its *Fannon* decision in *United States v. Gumerlock*, 590 F.2d 794 (9th Cir. 1979), *cert. denied*, 441 U.S. 948 (1979), and for purposes of this appeal, appellee has conceded that the airline employees's search of the footlocker was one conducted by a private individual, and hence not subject to the Fourth Amendment. Appellee also concedes the propriety of his arrest and the seizure of the footlocker but, as he did in the court below, challenges the search of its contents and the search of the matchbox. The standing issue is no longer before us as the State conceded, in oral argument, that appellee, charged with a possessory crime, has standing. The questions before us then, are the propriety of the searches of the footlocker and the matchbox.

## III.

At issue is whether the warrantless search by the Honolulu police of a footlocker was unreasonable?

The general rule is that warrantless searches are presumptively unreasonable unless they fall within one of the

narrowly-defined established exceptions. *Coolidge v. New Hampshire,* 403 U.S. 443, 454-455 (1971); *Katz v. United States,* 389 U.S. 347 357 (1967); *State v. Kender,* 60 Haw. 301, 307, 588 P.2d 447, 451 (1978); *State v. Patterson,* 58 Haw. 462, 467, 571 P.2d 745, 748 (1977); *State v. Kaluna,* 55 Haw. 361, 363, 520 P.2d 51, 55 (1974). The government has the burden of justifying warrantless searches. *Chimel v. California,* 395 U.S. 752, 762 (1969); *State v. Dias,* 62 Haw. 52, 57, 609 P.2d 637, 641 (1980); *State v. Kaluna,* 55 Haw. at 363, 520 P.2d at 55.

Here, the Los Angeles Police Department telephoned the Honolulu Police Department and informed them that a footlocker addressed to appellee, known to contain marijuana, would be arriving in Honolulu some six hours later. Clearly, Honolulu police officers had probable cause to arrest appellee when he took possession of the footlocker and also had probable cause to seize the footlocker based on the information received from Los Angeles. *See State v. Lloyd,* 61 Haw. 505, 509, 606 P.2d 913, 916 (1980); *State v. Hook,* 60 Haw. 197, 202, 587 P.2d 1224, 1228 (1978). Probable cause to seize the footlocker, however, does not permit the greater intrusion of a warrantless search of its contents. *Arkansas v. Sanders,* 442 U.S. 753, 763 (1979); *United States v. Chadwick,* 433 U.S. 1, 13 (1977). *Chadwick* and *Sanders* extended the prohibition of the Fourth Amendment against warrantless searches to personal luggage. "[L]uggage is a common repository for one's personal effects, and therefore is inevitably associated with the expectation of privacy." *Arkansas v. Sanders,* 442 U.S. at 762. The unauthorized search of the footlocker constituted an unreasonable invasion of appellee's reasonable expectation of privacy. In *Chadwick,* the United States Supreme Court held unreasonable a warrantless search of luggage or other similar personal items safely immobilized and under the control of law enforcement officers. In *Sanders,* the Court clarified its decision in *Chadwick* and explained that the automobile exception did not encompass the search of a suitcase found and seized from a vehicle and in the control of law enforcement officers, even though the officers had probable cause to believe it contained marijuana. The State does

not and cannot claim that any exigency existed at the time the footlocker was searched. Nor does it claim that the warrantless search of the footlocker was incident to the arrest of the possessor. This exception was not argued and moreover, it does not appear that the footlocker was within appellee's control or within reach such that he could harm the officer or destroy evidence.

The State disputes the applicability of *Chadwick* and *Sanders* to the facts of this case and would distinguish this case on the prior events in Los Angeles. The State's contention is that the appellee lost his privacy interest in his footlocker upon the initial opening in Los Angeles by the airline employee which he now concedes to have been one conducted by a private person. The State relies on the "controlled delivery" or "reassertion of control" theory. Under this theory, where there is a prior valid search of luggage or other personal items by a private person, a valid seizure by law enforcement officers of one jurisdiction and a "controlled delivery" to the addressee, a subsequent search at the termination point of a controlled delivery is merely a reassertion of possession and part of the first seizure. The second search is considered part of the first search since "official dominion ·continued unbroken because close surveillance followed the seized contraband insuring that it remain within official possession." *United States v. Ford*, 525 F.2d 1308, 1313 (10th Cir. 1975). *See United States v. Andrews*, No. 79-1963 (10th Cir. March 19, 1980), *petition for cert. filed* (U.S. April 23, 1980) (No. 79-1706); *United States v. Bulgier*, No. 79-2053 (7th Cir., April 8, 1980); *United States v. DeBerry*, 487 F.2d 448, 451 (2nd Cir. 1973); *McConnell v. State*, 595 P.2d 147, 154-155 (Alaska 1979); *State v. Pohle*, 166 N.J. Super. 504, 512, 400 A.2d 109, 114 (1979).

The reasoning in these cases is that the second (warrantless) search is based on the "continuing nature of an initially valid seizure and search." *McConnell v. State*, 595 P.2d at 154, n. 21. Here, appellee has conceded that the search by the airline employee was a valid one. In *Andrews, McConnell, Ford* and *DeBerry*, the law enforcement officers who ascertained the contraband nature of the contents of the container performed some act of dominion and control. For example, in

*Andrews*, detectives removed some of the cocaine from the plastic bag found in a package presented at an airline cargo service office for shipment. In *McConnell*, the Los Angeles police who had been called to the airport as a result of the discovery by an airline employee of marijuana, took the boxes to the police department where the contents were photographed and tested and two bricks kept as evidence and the box resealed. In *Ford*, the police officer, after confirming that the package contained heroin, marked the package, placed his business card inside it and resealed the package. In *DeBerry*, the officer removed one of the bricks of marijuana from the suitcase and marked the remaining bricks and the suitcase with his initials. There is lacking in the instant case a similar act of dominion and control by the Los Angeles police which would constitute a seizure.

For the purpose of the disposition of this case the parties had entered into the following stipulation that "there shall be no live testimony and the evidence for the hearing shall be the facts as set forth in the Memorandum of Points and Authorities in Support of Motion to Suppress, filed herein on March 15, 1978, page 1 through 8 inclusive, and the Transcript of Proceedings had in the above-entitled cause before the Grand Jury on Wednesday, February 1, 1978.'' We have carefully reviewed the above-referred to memorandum and it is significantly silent as to any seizure made of the footlocker by the police in Los Angeles. No such examination was made of the grand jury transcript of February 1, 1978 since it was not available. The concurring and dissenting opinion concludes that the Los Angeles police, by authorizing shipment of the contraband "intended to exercise dominion and control over the footlocker with the contraband.'' Intent, of course, is rarely susceptible of direct proof and must necessarily be inferred from the facts and circumstances in the case. On the record before us, we are unable to reach the conclusion that the Los Angeles police "intended'' to seize the footlocker and its contents and to exercise dominion and control over it from the Los Angeles airport to the Honolulu airport.

Thus it cannot be said that the footlocker containing the contraband was constructively seized by the police in Los

Angeles and that the Honolulu police, in searching its contents, were reasserting actual dominion over an item already under government control. When appellee's footlocker was searched, he was under arrest and the footlocker under the control of law enforcement officers. "[W]hen no exigency is shown to support the need for an immediate search, the Warrant Clause places the line at the point where the property to be searched comes under the exclusive dominion of police authority." *United States v. Chadwick*, 433 U.S. at 15. The information received from Los Angeles police provided probable cause to arrest appellee and seize the footlocker but the greater intrusion into the contents of the footlocker was unreasonable. Honolulu police officers had six hours in which to obtain a search warrant, which, given the facts of this case, no doubt would have been issued. "[M]ere inconvenience to police, or to the judge to whom the application for a warrant is presented, is never a valid reason for by-passing the warrant requirement." *State v. Dias*, 62 Haw. at 58, 609 P.2d at 641. There being no exigency, the warrantless search of the footlocker was unreasonable.

IV.

The Diamond safety matchbox which was seized from appellee's right front pants pocket after his arrest also contained marijuana. The trial court correctly rejected the State's argument that the search of the match box was incident to a lawful arrest.

Arrest without warrant requires probable cause. *State v. Barnes*, 58 Haw. 333, 335, 568 P.2d 1207, 1209 (1977); *State v. Gustafson*, 55 Haw. 65, 69, 515 P.2d 1256, 1259 (1973); *State v. Chong*, 52 Haw. 226, 231, 473 P.2d 567, 571 (1970). Based on the information from the Los Angeles police that the footlocker addressed to appellee contained marijuana, appellee concedes that the police officer had probable cause to arrest him for possession of marijuana in the footlocker. A search incident to a lawful arrest is limited to "a protective search for weapons, or towards the discovery of the fruits of the crime for which the accused has been arrested, as well as the

instrumentalities used in its commission, or to deprive the arrestee of potential means of escape." *State v. Barnes*, 58 Haw. at 338, 568 P.2d at 1211; *State v. Kaluna*, 55 Haw. at 370-371, 520 P.2d at 59; *State v. Hanawahine*, 50 Haw. 461, 464, 443 P.2d 149, 151-152 (1968); *cf. Gustafson v. Florida*, 414 U.S. 260 (1973); *United States v. Robinson*, 414 U.S. 218 (1973). It was unreasonable to search appellee's person for purposes of discovering fruits or instrumentalities of the crime for which he was arrested (possession of a footlocker of marijuana). The only information known to police was that a footlocker containing marijuana would be arriving in Hawaii. They had no reason to believe appellee had marijuana on his person. The police officer appears not to have been in danger of attack, and there is no indication of escape. Further, as in *Kaluna*, any possibility that the matchbox contained a weapon such as a razor blade was obviated once the matchbox was seized by the police officer. *State v. Kaluna*, 55 Haw. at 371, 520 P.2d at 59.

Accordingly, the trial court's order granting the motion to suppress is affirmed.

*Arthur E. Ross*, Deputy Prosecuting Attorney *(Roy K. S. Chang* and *Colleen K. Hirai,* Deputy Prosecuting Attorneys, on the briefs), for State of Hawaii, plaintiff-appellant.

*Evan R. Shirley* and *Wesley H. Ikeda (Shirley & Jordan* of counsel) for defendant-appellee.

### CONCURRING AND DISSENTING OPINION OF MENOR, J., WITH WHOM RICHARDSON, C.J., JOINS

I concur with the majority of this court that the match box was improperly searched. With respect to the search of the footlocker, however, I must dissent. In my opinion it was properly seized and searched by the Honolulu police without a warrant.

While apparently recognizing the validity of the "controlled delivery" or "reassertion of control" theory, the

majority of this court have sought to avoid its effect by attempting to distinguish the facts of this case from those where the doctrine has been applied.

The majority opinion points out that in *United States v. Andrews*, No. 79-1963 (10th Cir. March 19, 1980), detectives removed some cocaine from the plastic bag found in a package presented at an airline cargo service office for shipment; that in *McConnell v. State*, 595 P.2d 147 (Alaska 1979), the Los Angeles police took the boxes containing marijuana to the police department where the contents were photographed and tested, two bricks were kept as evidence, and the box was then resealed; that in *United States v. Ford*, 525 F.2d 1308 (10th Cir. 1975), the police officer, after confirming that the package contained heroin, marked the package, placed his business card inside it and resealed the package; and that in *United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973), the officer removed one of the bricks of marijuana from the suitcase and marked the remaining bricks and the suitcase with his initials. The majority opinion then goes on to say: *"There is lacking in the instant case a similar act of dominion and control by the Los Angeles police which would constitute a seizure. . . . Thus it cannot be said that the footlocker containing the contraband was constructively seized by the police in Los Angeles and that the Honolulu police, in searching its contents, were reasserting actual dominion over an item already under government control."* (Emphasis added)

I would suggest that the majority have misinterpreted the significance of those facts to which they have given prominence and to which they have given dispositive effect. In *Ford*, for example, the marking of the package and the placing of the police card within it were not the determinative factors.[1] The court said:

---

[1] Obviously, the marking of the package and the placement of the police card within it were made for the purpose of facilitating the later identification of the package and its contents. In a later case, United States v. Andrews, *supra*, the same court that decided *Ford* outlined what it considered to be the pertinent facts in Ford:

In *Ford*, . . . [t]he package, when opened by the airline agent was found to contain a powdery substance. Local police were called in. The police conducted

Realistically, the contraband was seized by officers in California before it was ever shipped to Oklahoma. *See United States v. DeBerry*, 487 F.2d 448 (2d Cir. 1973). The California officers marked the package and placed a business card inside it. Upon receiving the assurances of cooperation from Oklahoma City officers, *they authorized its shipment. This action constituted the initial act of control and dominion over the contraband, for without government authorization the airline officials could not have shipped the contraband.* This official dominion continued unbroken because close surveillance followed the seized contraband, insuring that it remain within official possession. Actual physical control was in fact reasserted by the Oklahoma City police when the arrest process was completed. These material facts are indistinguishable from *DeBerry, supra*, and we adopt *the analysis of that case in concluding that the official seizure of the contraband occurred in San Francisco when the government asserted dominion over it. The seizure must be judged against the Fourth Amendment as of that time and place.*
525 F.2d at 1312-1313 (emphasis added).

I would further suggest that they have failed to appreciate the real issue in this case which is: Did the Los Angeles police *intend* to exercise dominion and control over the footlocker with the contraband, and did they *in fact* assert dominion and control over the contraband? *Id., State v. Edwards*, 197 Neb. 354, 248 N.W.2d 775 (1977). If the answer is in the affirmative, then the finding must be that there was a seizure of the

---

an on-the-spot field test which showed that the powdery substance was heroin. The police resealed the package which was then shipped on a flight to Oklahoma City, where law enforcement officers had been alerted. When the package arrived in Oklahoma City, Linda Ford's mother, Kathryn, appellant in the case, claimed it at the airline office. She proceeded, under surveillance, with the package to a waiting car. After entering the car with the package, she threw it out a window when she observed police officers approaching. The officers arrested Ford, retrieved the package and secured its contents.
United States v. Andrews, *supra*, slip op. at 16-17.

The material facts in the instant case are thus no different from those that led the *Ford* court to find a seizure for controlled delivery purposes at the point of origin.

contraband by the Los Angeles police. *Id. Cf. State v. Lloyd*, 61 Haw. 505, 606 P.2d 913 (1980). In making this determination the *totality* of the police conduct must be considered. Facts in a given case are not to be viewed in isolation, one independent of the other. This is nothing more than an elementary evaluative principle. The majority, however, have failed to take all of the circumstances into consideration, and therein I think lies the flaw in their analysis.

I agree that the removal and retention by the Los Angeles police of part of the contraband before sending the balance on to Honolulu would have been a relevant consideration. I also concede that marking the footlocker and placing a police business card inside it would also have been a relevant consideration. But when the real issue is understood and properly addressed, it becomes evident that such conduct would merely be among the factors to be considered within the totality of the circumstances. When thus viewed, the absence of such specific conduct would not necessarily be determinative of whether the Los Angeles police intended to, and did, exercise dominion and control over the contraband. So that in holding that "[t]here is lacking in the instant case a similar act of dominion and control by the Los Angeles police which would constitute a seizure," the majority have misconceived the analytical process by which the issue is to be resolved.

The critical issue here can only be resolved by considering the totality of police conduct in this case. Here the record indisputably shows that it was the Los Angeles police who directed and authorized the shipment of the contraband. Only they could authorize it and they did. *United States v. Ford, supra.* It was they who made the arrangements with the Honolulu police and provided them with the description of the footlocker which contained the marijuana, the name and address of the consignee, the name of the airline, the flight number, and the expected date and time of arrival. The following from the Honolulu police report is particularly revealing:

> After discovering the suspected marijuana, [the airline employee] contacted the airport office of the L.A.P.D., Narcotics detail, and reported his discovery. Detective

McGraff responded and confirmed that the locker's contents were that of marijuana. The locker was closed and *sent to Honolulu for further investigation*.[2] (Emphasis added)

Thereafter Detective McGraff of the Los Angeles police spoke not once but twice with the Honolulu police regarding the contraband. Extending their cooperation to the Los Angeles police, the Honolulu police initiated a surveillance which eventually led to the arrest of the defendant and the seizure of the contraband. Under these circumstances, it can hardly be said that the Los Angeles police did not assert and maintain official dominion and control over the contraband until it was physically seized by the Honolulu police. When the Los Angeles police directed that the footlocker be sent on to Honolulu for further investigation, "this action constituted the initial act of control and dominion over the contraband, for without government authorization the airline officials could not have shipped the contraband." *United States v. Ford, supra* at 1312. This official dominion continued unbroken until actual physical control was reasserted by the Honolulu police. *Id.*

When considered in its entirety, the evidence clearly shows that the contraband was under government control from the time it was placed aboard the Honolulu-bound flight until it was recovered by the Honolulu police. It could not have been otherwise. Once the Los Angeles police were brought into the picture and the contents of the footlocker were confirmed by them to be contraband, the airline thereafter was powerless to act with respect to it other than by direction and authorization of the Los Angeles police. Every movement of the footlocker thereafter was by police request and authorization. The role of the airline in shipping the

---

[2] The sole purpose for sending the contraband on to Honolulu for further investigation was to make possible the apprehension of the addressee and others who might have been involved in the criminal scheme. The role of the Honolulu police under these controlled conditions was essentially to await the arrival of the contraband, maintain surveillance over it, and then seize both the suspect and the contraband after delivery to the claimant had been made.

contraband to Honolulu became that of a cooperator in the apprehension of law violators, rather than that of a common carrier engaged in its usual business enterprise. The part played by the Honolulu police in this contained episode was that of a partner, in the law enforcement context, continuing the surveillance and effecting the eventual apprehension of the criminal and the reassertion of actual physical control over the contraband. *United States v. Ford, supra; State v. Edwards, supra.* The majority's finding, therefore, that the contraband was not then "under government control" at the time the Honolulu police took it into custody does violence, in my opinion, not only to the obvious state of the record but also to the well established principle that where an individual (in this case the Los Angeles police), although not in actual possession of an object, knowingly has both the power and the intention at a given time to exercise dominion or control over the object, either directly or through another person, he is deemed to be in constructive possession of that particular object. *See generally,* 8A Words and Phrases 577-87 (perm. ed. 1951).

That contraband may be seized within the meaning of the Fourth Amendment without being taken into the actual and physical custody of the police is not open to dispute. The majority have conceded this point, and this court has so held. *State v. Lloyd, supra.* In that case we said in effect that where the police have brought contraband so far under their subjection that they can and do exercise dominion and control over it, a constructive seizure of the contraband will have occurred. There, police in one room of the suspect's residence were simply keeping contraband in another room under observation while a search warrant was being obtained. No one could go near it, however, without the approval of the police. Under those circumstances we held that in practical and legal contemplation a seizure of the contraband had occurred.

On facts remarkably similar to the facts here, the Supreme Court of Nebraska in *State v. Edwards, supra,* held that a seizure had been effected at the point of origin. In that case, a suitcase containing the contraband was opened by an

airport employee in Grand Island, Nebraska, when he detected the odor of marijuana emanating from the suitcase. He opened it, found the marijuana, and called the police. When the officer arrived, another airport employee reopened the suitcase for the purpose of displaying its contents to the officer. The officer viewed the contents and took down the information shown on the tag attached to the suitcase. The suitcase was then forwarded to North Platte, Nebraska, and the police there were alerted to its expected arrival. The North Platte police initiated a surveillance of the suitcase after it arrived, and when the defendant claimed it they followed him to his mother's residence where he was arrested and the suitcase seized. The Nebraska supreme court found that the initial seizure had taken place at the Grand Island terminal and not at North Platte as claimed by the defendant, and, expressly adopting the rationale of *United States v. Ford*, *supra*, upheld the trial court's denial of the defendant's motion to suppress.

I would reverse the trial court's suppression of the footlocker and its contents.