STATE OF HAWAII, Plaintiff-Appellant *v.* ISAAC L. BUNKER, Defendant-Appellee

NO. 9363

(CRIMINAL NO. 7289(2))

MAY 18, 1984

LUM, C.J., NAKAMURA, PADGETT, HAYASHI AND WAKATSUKI, JJ.

*Per Curiam.* Isaac L. Bunker was arrested without a warrant on December 28, 1982 at Banyan Tree Park in Lahaina, Hawaii. He moved to suppress statements made by him to police officers after his warrantless arrest. After hearing on the motion, the trial court granted the suppression of the statements finding that they were fruits of an arrest executed in non-conformance with Hawaii Revised Statutes (HRS) § 803-6(a) (1976) reasoning that the arresting officers had not clearly informed Bunker of the cause of his arrest. The State appealed pursuant to HRS § 641-13(7) (1976 & Supp. 1983). We reverse.

I.

On December 28, 1982 Police Officer Kenneth Victorino proceeded to 478 Front Street, Lahaina, to investigate an alleged shooting. At the scene, resident Clifford Inman told Victorino that he heard a person he identified as Bunker arguing with someone in a very loud voice and that Bunker had threatened "to blow the f------ landlord's head off."

Other officers converged on the scene and proceeded to gather information from people in the area about the incident. Officer Mortel obtained information that Bunker had threatened a Caucasian male and, to impress the male with the seriousness of the threat, Bunker placed a gun against his own head and fired a round hitting his scalp. Bunker then told the male and the male's companion that the other rounds were for them.

Officer Eugene Santiago elicited information from an employee at a nearby restaurant who said that she had gotten a telephone call from two Caucasian males regarding a guy named "Ike". The callers told her that "Ike" was after them and was armed with a gun. She was then told to be watchful.

Santiago and Mortel reported to Victorino the information they had gathered. Both Victorino and Santiago knew that Bunker was a felon. Having completed their investigation, Victorino, Santiago and another officer left the scene. They headed towards Banyan Tree Park in response to an alleged fight there. Fortuitously, from his patrol car, Victorino saw Bunker at the park walking away from a telephone booth. Bunker had no shirt on and was carrying some kind of object in his right hand, while his left hand was holding a light-colored shirt.

Victorino followed Bunker in his squad car and observed Bunker from a distance of about 20 to 30 feet. As he kept pace with Bunker, Victorino called out to him, "Ike, come over. I want to talk to you a little bit." Bunker started to go over to where Victorino was, but turned, and headed back to the telephone booth. At the same time, he wrapped the object with the shirt he was carrying. Bunker appeared nervous to Victorino.

Victorino stopped his car and got out. At this point, Victorino was concerned for his safety since he was afraid that Bunker was armed. Victorino then saw Bunker heading quickly to the rear

portion of a parked car. Bunker fumbled with his shirt and dropped down at the rear of the car. He reappeared and Victorino called him over. Victorino then grabbed him in a sprint position and patted him for weapons. Bunker was taken into custody by Santiago and was told that the arrest was for "investigation of a shooting incident." Santiago informed Bunker of his constitutional rights, after which he was handcuffed. Thereafter, Bunker made incriminating statements which he sought to suppress.

After hearing the evidence, the trial court found that the utterance made by the arresting officers to Bunker that he was under arrest for "investigation of a shooting incident" did not clearly set forth the cause of his arrest. Since this was not in conformance with HRS § 803-6(a),[1] the statements made by Bunker were suppressed as fruits of an unlawful arrest.

## II.

HRS § 803-6(a) states that the arresting officer "should" give the party arrested "what cause he undertakes to make the arrest." It does not impose a mandatory requirement on the arresting officer to inform an arrestee with particularity the exact offense for his arrest. *Cf., State v. Vance,* 61 Haw. 291, 602 P.2d 933 (1979); *State v. Kimball,* 54 Haw. 83, 503 P.2d 176 (1972). Here, Bunker was informed that he was arrested for "investigation of a shooting incident." We find that this was sufficiently informative so that he was clearly able to understand the cause for which he was under arrest. We hold that the arrest was in compliance with HRS § 803-6(a).

## III.

The dispositive issue we need to examine is whether there was probable cause to arrest without a warrant. *State v. Rosborough,* 62

---

[1] HRS § 803-6(a) provides:

§ 803-6 *Arrest, how made.* (a) At or before the time of making an arrest, the person shall declare that he is an officer of justice, if such is the case. If he has a warrant he should show it; or if he makes the arrest without warrant in any of the cases in which it is authorized by law, he should give the party arrested clearly to understand for what cause he undertakes to make the arrest and shall require him to submit and be taken to the police station or judge. This done, the arrest is complete.

Haw. 238, 615 P.2d 84 (1980). HRS § 803-5(a) (1976 & Supp. 1982)[2] permits an arrest without warrant when the police officer has "probable cause" to believe that a person has committed "any offense, whether in the officer's presence or otherwise." Here, although the trial court made no explicit finding of probable cause, we have reviewed the facts and circumstances and we find that there was probable cause to arrest. *See, State v. Haili,* 63 Haw. 553, 632 P.2d 1064 (1981). *State v. Melear,* 63 Haw. 488, 630 P.2d 619 (1981).

Officers Victorino and Santiago were acting in concert and knowledge of one may be properly imputed to the other. *State v. Bennett,* 62 Haw. 59, 610 P.2d 502 (1980). They had information from Inman that Bunker had made threats of bodily harm on another. Inman as a citizen eyewitness is presumed reliable. *State v. Decano,* 60 Haw. 205, 588 P.2d 909 (1978). Furthermore, Bunker's threat was corroborated by others, although unidentified. *Cf. State v. Crowder,* 1 Haw. App. 60, 613 P.2d 909 (1980). The officers also knew that he was a felon and that felons are prohibited from possessing firearms. *See* HRS § 134-7 (1982); *State v. Chong,* 52 Haw. 226, 473 P.2d 567 (1970). When the officers saw Bunker, his actions were furtive and sufficient to cause the officers to be apprehensive for their safety. Under these circumstances, the officers at the moment of arrest had probable cause to arrest Bunker for Terroristic Threatening in the Second Degree. *See* HRS §§ 707-715 and 707-717 (1976 and Supp. 1982). The fact that he was arrested for "investigation of a shooting incident" does not invalidate the arrest so long as there was probable cause to arrest for "any offense, whether in the officer's presence or otherwise." HRS § 803-5(a). Accordingly, we hold that there was probable cause to arrest without warrant.

Having found that the arrest was valid and that there was probable cause, we need not reach the remaining issue raised regarding the spontaneity of the statements. We reverse and remand to the trial court for further proceedings.

---

[2] HRS § 803-5(a) provides:

(a) A police officer or other officer of justice, may, without warrant, arrest and detain for examination any person when the officer has probable cause to believe that such person has committed any offense, whether in the officer's presence or otherwise.

178

*Artemio C. Baxa,* Deputy Prosecuting Attorney, for plaintiff-appellant.

*Madelyn D'Enbeau* for defendant-appellee.